RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206
File Name: 06a0262p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

DAVID NACK ex rel. ALICE NACK,
　　　　　　　　　　*Plaintiff-Appellant,*

　　*v.*

ORANGE CITY SCHOOL DISTRICT,
　　　　　　　　　　*Defendant-Appellee.*

No. 05-3256

>

Appeal from the United States District Court
for the Northern District of Ohio at Cleveland.
No. 03-01691—Ann Aldrich, District Judge.

Submitted: June 8, 2006

Decided and Filed: July 26, 2006

Before: SILER, DAUGHTREY, and ROGERS, Circuit Judges.

---

## COUNSEL

**ON BRIEF:** Stephen Walker, Beachwood, Ohio, for Appellant. Susan C. Hastings, Chandra S. Bowling, SQUIRE, SANDERS & DEMPSEY, Cleveland, Ohio, Scott C. Peters, Krista K. Keim, Lori A. Kosakowski, BRITTON, SMITH, PETERS & KALAIL, Cleveland, Ohio, for Appellee.

---

## OPINION

---

　　　SILER, Circuit Judge. In this action for relief under the Individuals with Disabilities Education Act ("IDEA"), plaintiff David Nack ("Nack")[1] appeals the district court's grant of summary judgment to the Orange City School District ("Orange"). Nack sued Orange for denying him a free and appropriate public education ("FAPE") because of various deficiencies with the Individualized Education Programs ("IEP") it had crafted and implemented for David. The district court concluded that none of the challenged IEPs denied David a FAPE and granted summary judgment to Orange. We affirm.

---

　　　[1]As the district court did, the court will employ "Nack" generically to refer to the plaintiff, *i.e.*, David Nack, suing through his parent and legal guardian, Alice Nack. When discussing specific actions taken by either David or his mother, the court will describe these individuals as "David" and "Mrs. Nack" respectively.

**BACKGROUND**

David began attending Orange as a fifth-grader at the beginning of the 2000-01 school year. Prior to attending Orange, David had been diagnosed with a speech-language deficit and a learning disability, and was found eligible for special education services. Because of this, his education had been governed by a succession of IEPs based upon multi-factored evaluations ("MFE") of his learning ability and behavior. Mrs. Nack, a special education teacher with a master's degree in the field and extensive experience, was always very involved in David's education and the development of his IEPs. Accordingly, when David was enrolled in Orange, Mrs. Nack met shortly thereafter with April Siegel-Green, Coordinator of Special Education, to discuss various IEP issues and concerns and to provide a copy of David's fifth-grade IEP (which had already been developed at his previous school) to Siegel-Green. Orange educated David in accordance with the dictates of this fifth-grade IEP.

At the end of the fifth-grade year, David was performing at grade level and received passing grades in each of his subjects. In April 2001, David's IEP team, which included Mrs. Nack, two teachers, a speech language therapist, and Siegel-Green, met to develop an IEP for the 2001-02 school year – David's sixth-grade year. The sixth-grade IEP contained various changes to David's schooling, and Mrs. Nack signed off on the document. Staff meetings were held on a weekly basis to discuss David's progress, and David was educated pursuant to the IEP. However, beginning in October 2001 and continuing throughout the school year, David began experiencing disciplinary problems at school. In an attempt to rein in David's behavior, Mrs. Nack met with David's IEP team and the team amended his IEP to address these new concerns. Mrs. Nack initialed the changes to the IEP occurring at this meeting. Among these changes was to have David attend a social skills group in the Middle School Positive Alternative Success Strategies ("MPASS") classroom at Orange – a special education classroom. Later, Mrs. Nack repeatedly expressed her unhappiness with David's placement in the MPASS classroom.

Due to both absence and suspension from school, David was attending school infrequently by the end of February. Numerous meetings between Mrs. Nack and school officials sought to address this problem and David's IEP was changed accordingly; however, his attendance remained sparse. In April, David was hospitalized for almost a week after making "suicidal threats at home" that he attributed to "his problems at school." Also, Mrs. Nack explored the option of home schooling her son during this time, with assistance from Orange. Ultimately, David scored proficient for all of the subjects on the Ohio Sixth-grade Proficiency Tests, even scoring advanced proficient in writing.

In May 2002, David's IEP team met for the first of three meetings concerning his IEP for his seventh-grade year in 2002-03. Ultimately, the team developed an IEP that identified the MPASS classroom as the least restrictive environment for David and recommended he spend a portion of his day in that classroom. Mrs. Nack disagreed with this assessment and placement and refused to consent to the seventh-grade IEP. She filed a due process complaint against the school in June 2002 and Orange filed its own due process complaint the same month, seeking to impose a more restrictive environment on David. The Impartial Hearing Officer ("IHO") found that "the implementation of the 2000-01 IEP and the creation and implementation of the 2001-02 IEP" provided David "with a FAPE and were designed to impart meaningful educational benefit." The IHO also found that the placement of David in a more restrictive environment (the MPASS classroom) was appropriate. The seventh-grade IEP was found to provide David a FAPE, except to the extent that it failed "to address the need for individual psychotherapy on a weekly basis." The IHO found that flaw denied David a FAPE. On appeal, the State Level Review Officer ("SLRO") agreed with the IHO's conclusions, except that the SLRO found the seventh-grade IEP was adequate as drafted with regard to psychotherapy. Thus, the SLRO found completely in Orange's favor.

After Nack appealed, the district court granted summary judgment to Orange, affirming the SLRO's decision "that none of the challenged IEPs denied David a FAPE."

## DISCUSSION

### I. IDEA Issues

"The IDEA was designed to give children with disabilities a free appropriate public education designed to meet their unique needs." *Burilovich v. Bd. of Educ. of Lincoln Consol. Sch.*, 208 F.3d 560, 566 (6th Cir. 2000) (citations omitted). A FAPE "consists of educational instruction specially designed to meet the unique needs of the handicapped child, supported by such services as are necessary to permit the child 'to benefit' from the instruction." *Bd. of Educ. of the Hendrick Hudson Cent. Sch. Dist. v. Rowley*, 458 U.S. 176, 188-89 (1982); *see also* 20 U.S.C. § 1401(9).

> As part of providing a FAPE, school districts receiving funds under the IDEA are required to establish an IEP for each child with a disability. The IEP must contain a specific statement of the child's current performance levels, the child's short-term and long-term goals, the educational and other services to be provided, and criteria for evaluating the child's progress.

*Deal v. Hamilton County Bd. of Educ.*, 392 F.3d 840, 853 (6th Cir. 2004).

There are two parts – procedural and substantive – to a court's inquiry in IDEA suits. *Deal*, 392 F.3d at 853. "First, the court must determine whether the school system has complied with the procedures set forth in the IDEA. Second, the court must assess whether the IEP developed through those procedures was reasonably calculated to enable the child to receive educational benefits." *Id.* at 853-54 (citations omitted). "If these requirements are met, the State has complied with the obligations imposed by Congress and the courts can require no more." *Rowley*, 458 U.S. at 207. Furthermore, it is clear that "parents have the burden of proving by a preponderance of the evidence that the IEP was inadequate." *Renner v. Bd. of Educ. of Pub. Sch. of City of Ann Arbor*, 185 F.3d 635, 642 (6th Cir. 1999) (internal quotations and citations omitted).

District courts are required to conduct a "modified de novo review" of the administrative proceedings in IDEA cases. *N.L. ex rel. Mrs. C. v. Knox County Sch.*, 315 F.3d 688, 692 (6th Cir. 2003).

> Under a modified de novo standard of review, a district court is required to make findings of fact based upon a preponderance of the evidence contained in the complete record, while giving some deference to the fact findings of the administrative proceedings, particularly when educational expertise is essential to the findings.

*Id.* (citations omitted).

We "must ensure that there are no genuine issues regarding the facts essential to the hearing officer's decision." *Burilovich*, 208 F.3d at 567 (citation omitted). It is appropriate to "rely upon the hearing officer's presumed educational expertise, as long as the material facts underlying the officer's determination are not in dispute." *Id.* Nack makes three specific procedural challenges to the IEPs before us and also substantively alleges that David's sixth- and seventh-grade IEPs were not reasonably calculated to enable him to receive educational benefits. Each charge will be dealt with in turn.

## A. Procedural Violations

With regard to procedural matters, a court should "strictly review an IEP for procedural compliance," although technical deviations will not render an IEP invalid. *Dong*, 197 F.3d at 800; *see Cleveland-Heights-Univ. Heights City Sch. Dist. v. Boss ex rel. Boss*, 144 F.3d 391, 398 (6th Cir. 1998) (noting that "minor technical violations may be excused"). A finding of procedural violations does not necessarily entitle appellants to relief. *Knable* [*ex rel. Knable*], 238 F.3d [755,] 764 [(6th Cir. 2001)]. Only if a procedural violation has resulted in substantive harm, and thus constitutes a denial of a FAPE, may relief be granted. *Id.* The Supreme Court has emphasized the importance Congress attached to the IDEA's procedural safeguards:

> [T]he congressional emphasis upon full participation of concerned parties throughout the development of the IEP, as well as the requirements that state and local plans be submitted to the Secretary for approval, demonstrates the legislative conviction that adequate compliance with the procedures prescribed would in most cases assure much if not all of what Congress wished in the way of substantive content in an IEP.

*Rowley*, 458 U.S. at 206. "If the procedural requirements of the IDEA are met, greater deference is to be afforded to the district's placement decision." *Dong*, 197 F.3d at 800.

*Deal*, 392 F.3d at 854.

Nack argues that Orange procedurally violated the IDEA in the following ways: (1) it predetermined a particular program for David without regard for his individual needs; (2) all of David's IEPs at Orange failed to procedurally comply with the IDEA; and (3) Mrs. Nack was given inadequate notice with regard to David's seventh-grade IEP.

### 1. Predetermination

Nack first argues that Orange violated the IDEA with David's seventh-grade IEP by deciding to place David out of the mainstream of the regular education environment without first considering an "array of inclusion settings with supplemental aids and support services." In effect, Nack alleges predetermination – that Orange had "pre-selected" a particular program for David "regardless of [his] demonstrated individual needs." *Deal*, 392 F.3d at 855. Predetermination amounts "to a procedural violation of the IDEA." *Id.* at 857. It can cause substantive harm, and therefore deprive a child of a FAPE, where parents are "effectively deprived" of "meaningful participation in the IEP process." *Id.* However, predetermination is not synonymous with preparation. Federal law "prohibits a completed IEP from being presented at the IEP Team meeting or being otherwise forced on the parents, but states that school evaluators may prepare reports and come with pre-formed opinions regarding the best course of action for the child as long as they are willing to listen to the parents and parents have the opportunity to make objections and suggestions." *Knox County Sch.*, 315 F.3d at 694; *see also* 34 C.F.R. § 300, App. A, No. 32. We have emphasized that this "[p]articipation must be more than mere form; it must be *meaningful*." *Deal*, 392 F.3d at 858 (citations omitted; emphasis in original). We review a predetermination decision *de novo*, "since it is a mixed question of law and fact." *Id.* at 857 (citation omitted).

Nack points to a variety of evidence that he claims proves predetermination, including the school's written notice, Laurie Barron's testimony, Linda Cusick's testimony, and certain conclusions by the IHO. However, this evidence, while signaling Mrs. Nack's disagreement with Orange's ultimate decision, does little to prove Nack's claim that Orange had predetermined David's

educational path. In fact, three separate IEP meetings were held concerning David's seventh-grade IEP and Mrs. Nack actively participated in each of these meetings. Prior to and during these meetings, Mrs. Nack repeatedly made school officials aware of her "disapproval of David's participation" in the MPASS program and her desire for him to remain in "regular education" setting. Mrs. Nack was always able to be a significant part of the discussions concerning the 2002-03 IEP.

> [T]his is a far cry from the situation in *Deal* where the Sixth Circuit found (1) numerous procedural and substantive errors, (2) that the school district had an unofficial policy of refusing to consider certain programs regardless of the child's needs, and (3) that the district's main concern was financial. Indeed, in *Deal*, the parents were not even allowed to ask questions during the IEP meetings.

*Winkelman v. Parma City Sch. Dist.*, 411 F.Supp.2d 722, 728-29 (N.D. Ohio 2005) (citing *Deal*, 392 F.3d at 855-59). Likewise, in *Spielberg ex rel. Spielberg v. Henrico County Public Sch.*, 853 F.2d 256, 259 (4th Cir. 1988), the Fourth Circuit found predetermination in a situation where the school "resolved to educate [the child] at [one school], and then developed an IEP to carry out their decision." There is simply no evidence here that Orange had pre-decided David's fate prior to the IEP meeting. While there clearly had been ongoing discussions concerning David and certain portions of the IEP had been drafted in advance, "school evaluators may prepare reports and come with pre-formed opinions regarding the best course of action for the child as long as they are willing to listen to the parents and parents have the opportunity to make objections and suggestions." *Knox County Sch.*, 315 F.3d at 694. Here, Mrs. Nack was given many opportunities to comment on the IEP and, by every indication, Orange took her suggestions seriously. In the end, there is insufficient evidence in the record to prove a procedural violation of the IDEA through predetermination.

*2. Validity of David's IEPs*

Next, Nack claims that Orange procedurally violated the IDEA since the various IEPs created for David did not conform to the requirements of 20 U.S.C. § 1414(d)(1)(A). The SLRO found that there were no procedural violations in the fifth-grade or seventh-grade IEPs. As for the sixth-grade IEP, the SLRO, like the IHO, ruled that procedural errors were committed, including "that either sufficient present levels of educational performance were not provided or were not provided to the extent necessary to implement goals and objectives," and that Orange had "fail[ed] to provide weekly assignment sheets." However, the SLRO ruled that there was no substantive violation in that "these errors in the IEP [neither] resulted in a loss of educational opportunity for the Student or infringed upon Parent's opportunity to participate in the IEP process." On review, the district court noted that Orange did not dispute that the IEPs were incomplete, but the court ultimately found that "there [was] no evidence that David or Mrs. Nack suffered any substantive harm as a result of the omission of such data, and thus nothing to connect the procedural shortcomings to actual denial of educational opportunities for David."

Looking first to the fifth- and seventh-grade IEPs, Nack asserts that these IEPs failed to conform to the requirements of § 1414(d)(1)(A), but points to no particular portions of the IEPs that are flawed and instead chooses to simply state that the IEPs failed to conform to many of the IDEA's requirements. Nevertheless, a review of the fifth-grade IEP shows that it fully complies with the requirements of § 1414(d)(1)(A)(I) and 34 C.F.R. § 300.347 in that it contains all of the required information and there are no allegations that Orange erred in its implementation. Similarly, the seventh-grade IEP contains the required information and Nack again fails to point to any specific

problems.**2** Given both the apparent completeness of each IEP and that Nack points to no particular deficiencies with the creation or implementation of the IEPs, the fifth- and seventh-grade IEPs satisfy the procedural requirements of the IDEA. *See* 20 U.S.C. § 1414(d)(1)(A)(I); 34 C.F.R. § 300.347(a).

As for the sixth-grade IEP, Orange concedes that it failed to appeal to the SLRO the IHO's decision that David's sixth-grade IEP did not conform with the requirements of 20 U.S.C. § 1414(d)(1)(A). Therefore, we assume that David's sixth-grade IEP was procedurally flawed. Nonetheless, "[a] procedural violation of the IDEA is not a *per se* denial of a FAPE; rather, a school district's failure to comply with the procedural requirements of the Act will constitute a denial of a FAPE only if such violation causes substantive harm to the child or his parents." *Knable ex rel. Knable v. Bexley City Sch. Dist.*, 238 F.3d 755, 765 (6th Cir. 2001) (citations omitted). Substantive harm occurs when the procedural violations in question either "seriously infringe upon the parents' opportunity to participate in the IEP process" or "deprive an eligible student of an individualized education program or result in the loss of educational opportunity." *Id.* at 765-66 (citations omitted). Mrs. Nack does not allege that her opportunity to participate in the IEP process was seriously infringed upon by these procedural violations. Instead, relying heavily upon the Sixth Circuit decision in *Boss*, 144 F.3d 391, Nack argues that David was substantively harmed by the failure of the IEP to provide a baseline to measure David's future progress.

In *Boss*, the IEP did not include "appropriate objective criteria for measuring [the child's] progress," 144 F.3d at 398, and instead contained only "vague and general statements," *id.* at 394 n.1. Since the required components of an IEP are how "the adequacy of an IEP is to be judged," we held that this violation was "far from technical" and not harmless since the "omission went to the heart of the substance of the plan." *Id.* at 398-99. We distinguished a prior case, *Doe ex rel. Doe v. Defendant I*, 898 F.2d 1186 (6th Cir. 1990), by noting that the ruling in that case "relied upon the undisputed fact that 'the information absent from the IEP was known to all parties.'" *Id.* at 399. *Defendant I* held that invalidating an IEP for minor technical violations would "exalt form over substance" given the Supreme Court's concern with "[a]dequate parental involvement and participation in formulating an IEP, not adherence to the laundry list of items" now in § 1414(d)(1)(A)(i). 898 F.2d at 1191.

This case appears closer to *Defendant I* than *Boss*. The primary shortcoming of the sixth-grade IEP was its failure to provide a baseline by which to measure David's future progress. However, as the IHO noted, David's test results, which he scored at or above proficiency standard in all categories, along with Maxine Rosenbaum's probes showing David's progress, demonstrated that he derived educational benefits from the sixth-grade IEP as implemented. Moreover, as the IHO noted, the short-term objectives in the IEP are capable of measurement and are not as vague and

---

**2**Mrs. Nack does claim that Orange "did not assess David in all areas related to all his disabilities" in his seventh-grade IEP and that this also constituted a procedural violation of the IDEA under 20 U.S.C. § 1414(b)(3). She argues that Dr. Anders's uncontradicted testimony proves this, but the IHO unreasonably refused to consider it. Despite these claims, there is ample evidence in the record to support Orange's assertion that it was unaware of Anders's assessment of David at the time it completed the seventh-grade IEP. As the IHO noted, "it was not appropriate for the parent to expressly withhold this information from team participants at these meetings and now to raise the need for an occupational therapy evaluation as an issue in due process." Due to Orange's lack of knowledge of Anders's occupational evaluation and the fact that Mrs. Nack had previously forbade the school system from proceeding with "general intelligence, achievement, or communicative status direct assessments of David," Mrs. Nack cannot claim that the school system erred by not having information that she withheld from them. *See Cleveland Heights-Univ. Heights City Sch. Dist. v. Boss ex rel. Boss*, 144 F.3d 391, 398 (6th Cir. 1998).

generalized as in *Boss*. In the end, the minor procedural violations of the sixth-grade IEP cannot be said to have caused David any substantive harm.[3]

*3. Notice*

Nack also argues that Orange's written notice to Mrs. Nack concerning David's seventh-grade IEP falls short of the notice required under the IDEA because it fails to adequately discuss the various placement options considered. Nack is correct that 20 U.S.C. § 1415(c)(1)(E) requires a school system's notice to parents to contain "a description of other options considered by the IEP Team and the reason why those options were rejected." Even so, Orange's notice to Mrs. Nack fulfills this requirement. The notice provided by Orange clearly states the other options considered by the IEP team (inclusion classrooms and small group instruction via a tutor) and goes on to state why those options were rejected (David's past behavior in school and his lack of success in less restrictive environments).

## B. Substantive Violations

The second prong of *Rowley* requires us to determine whether David's IEPs were reasonably calculated to enable David to receive educational benefits. *See* 458 U.S. at 206-07. "The party challenging the terms of an IEP bears the burden of proving that it is inappropriate." *Knable*, 238 F.3d at 768 (citation omitted). Moreover,

> administrative findings in an IDEA case may be set aside only if the evidence before the court is more likely than not to preclude the administrative decision from being justified based on the agency's presumed educational expertise, a fair estimate of the worth of the testimony, or both. A court should defer to the administrative findings only when educational expertise is relevant to those findings and the decision is reasonable . . . . We also reiterate that, when there is a conflict between the holdings of the local and state hearing officers, the court must defer to the state hearing officer's decision in reviewing the record on appeal.

*Burilovich*, 208 F.3d at 567.

Nack claims that David's lack of progress during his sixth-grade year, Martin's testimony that the seventh-grade IEP did not "adequately address" David's behaviors, and David's increasingly problematic behavior prove that his IEPs for his sixth- and seventh-grade years were not reasonably calculated. The "IDEA does not require that a school either maximize a student's potential or provide the best possible education at public expense. The statute only requires that a public school provide sufficient specialized services so that the student benefits from his education." *Fort Zumwalt Sch. Dist. v. Clynes*, 119 F.3d 607, 612 (8th Cir. 1997) (citing *Rowley*, 458 U.S. at 195, 203). Orange diligently worked with Mrs. Nack to give David an education that was highly focused on his individual needs. The IHO's findings of facts reveal no less than a dozen email communications and sixteen face-to-face meetings between Mrs. Nack and school officials over the period of August 2000 to June 2002. Moreover, daily communications regarding David's homework were sent home to Mrs. Nack beginning in the sixth-grade school year, weekly assignment sheets were implemented as well later that year, and weekly staff meetings were held for David's teaching team to discuss his progress.

---

[3]The SLRO also determined that Orange had failed "to provide weekly assignment sheets" for a period of roughly three months. But the IHO determined that this technical violation did not affect Nack's educational opportunity because his teacher provided *daily* communications in a student agenda book. It does not appear that Nack has challenged the IHO's conclusion. *See* Nack's Br. at 42 (listing other deficiencies with the IEPs).

Apart from the effort expended by Orange, the instruction was also highly focused upon ensuring progress in David's troubled areas. The record shows an extraordinary effort by Orange to tailor its educational offerings to David's needs. All of David's IEPs contain detailed plans for his education in a variety of settings and include numerous accommodations and various instances of individualized instruction. Moreover, as David encountered problems during his sixth-grade year, Orange revised David's IEP and added additional services in order to better reflect David's changing needs and behaviors and Mrs. Nack's concerns about her son. The individualized tailoring was further evidenced during the development of the seventh-grade IEP.

To the extent that Nack relies upon David's lack of progress during his sixth-grade year as proof of the fallibility of Orange's IEP, the argument misses the mark. As stated above, the IDEA does not guarantee success – it only requires a school to "provide sufficient specialized services so that the student benefits from his education." *Fort Zumwalt Sch. Dist.*, 119 F.3d at 612 (citing *Rowley*, 458 U.S. at 195). As for Martin's report and recommendations, which Nack claims were ignored by the IEP team, David's seventh-grade IEP incorporated the vast majority of these recommendations. In any event, the fact that the IEP team chose not to adopt all of Martin's recommendations hardly compels the conclusion that the IEP itself was lacking.

## II.  Independent Review of the Evidence

Nack also alleges that she recently learned that the district court failed to make an independent review of the evidence as required under controlling precedent. *See Burilovich*, 208 F.3d at 566. Although the district court docket sheet indicates that the administrative record was not filed in the district court at the time that the district court issued its decision, we need not remand this case. First, Nack offers no reason why she could not have discovered and addressed this error in the court below. Second, she fails to describe how the district court's failure to have the record filed affected the outcome of this case. Indeed, our own independent examination of the record convinces us that the district court's determinations were correct.

## III.  Motion for Costs and Attorney's Fees

Finally, Orange has filed a motion with this court requesting attorney's fees and costs relating to Nack's failure to include in the joint appendix portions of the record that Orange designated in its proof brief. Federal Rule of Appellate Procedure 30(a)(1) states, "The appellant must prepare and file an appendix to the briefs containing . . . other parts of the record to which the parties direct the court's attention." Moreover,

> In the absence of an agreement, the appellant must, within 10 days after the record is filed, serve on the appellee a designation of the parts of the record the appellant intends to include in the appendix and a statement of the issues the appellant intends to present for review. The appellee may, within 10 days after receiving the designation, serve on the appellant a designation of additional parts to which it wishes to direct the court's attention. The appellant must include the designated parts in the appendix.

FED. R. APP. P. 30(b)(1). The Sixth Circuit Rules add:

> (b) Designation of Contents. The appellant shall file and serve as an addendum to the appellant's brief a designation of those parts of the record to be included in the joint appendix. The appellee shall file and serve as an addendum to the appellee's brief a cross-designation setting forth any parts of the record the appellee wants to have included in the joint appendix that do not appear in the appellant's designation . . . .

(d) Time for Filing.  The appellant has the responsibility to prepare the joint appendix and shall serve and file it not later than 21 days after the filing of the appellee's "proof" brief.

(m) Sanctions. . . . [A]ny counsel who so complicates the proceedings in the case by unreasonably and vexatiously failing to comply with the requirements of this local rule may be required by this Court to satisfy personally any excess costs, pursuant to 28 U.S.C. § 1927, and may be subject to disciplinary sanctions.

6 Cir. R. 30.

Here, the facts are undisputed.  On August 24, 2005, counsel for Nack sent Orange a letter requesting "a list of that which you would like included in the Joint Appendix."  Orange did not respond to this letter and instead simply attached a designation of appendix contents to its proof brief when it submitted the brief on November 1, 2005.  Nack's counsel sent another letter to Orange on November 9, 2005, indicating that Orange had an "obligation" to inform him of its designation of appendix contents earlier and that it was his understanding that the Appendix had already been prepared.  Orange responded by letter on November 11 highlighting that it had complied with Sixth Circuit Rules and it "had no obligation to inform you regarding what it wanted to include in the Appendix" prior to the filing of its proof brief.  Nack's attorney responded with a letter on November 14, stating that he believed Orange's "obligations go beyond 6 Cir. R. 30(b) and (d)" to include "an obligation to timely advise Appellant what you desired be included in the Appendix" and that it was now "physically impossible for us to include" Orange's designation for the appendix.  Orange replied on November 16 reaffirming its view that it was Nack's responsibility to include its designation in the appendix.  Orange received a copy of Nack's appendix on November 28 and it did not include Orange's designations.  Orange now seeks a total of $1,196.76 in costs ($135 for one hour of attorney's fees and $1,061.79 in copying costs).

Rule 30(b) clearly states that appellee should "file and serve as an addendum to the appellee's brief a cross-designation setting forth any parts of the record the appellee wants to have included in the joint appendix that do not appear in the appellant's designation."  6 Cir. R. 30(b).  Orange did exactly this.  However, Orange was, at the very least, inconsiderate in failing to respond to Nack's first inquiry on August 24.  If nothing else, a letter stating that its designation of appendix contents were to be included in its proof brief would have been in order.  Based upon a lack of civility of both parties, Orange's motion for costs and attorney's fees is granted in part and denied in part.  The reimbursement request for the $135 in attorney's fees is denied.  As for the costs of preparation of the supplemental appendix, the parties should jointly bear this expense and, accordingly, Orange shall be limited in the award of costs for appendix preparation to $367.13, or half of the costs incurred by Orange in producing the portions of its supplemental appendix not included in Nack's joint appendix.  Other costs shall be determined according to F.R.A.P. 39.

AFFIRMED.