# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

November 14, 2007

**Before**

Hon. FRANK H. EASTERBROOK, *Chief Judge*
Hon. WILLIAM J. BAUER, *Circuit Judge*
Hon. RICHARD A. POSNER, *Circuit Judge*
Hon. JOEL M. FLAUM, *Circuit Judge*
Hon. KENNETH F. RIPPLE, *Circuit Judge*
Hon. DANIEL A. MANION, *Circuit Judge*
Hon. MICHAEL S. KANNE, *Circuit Judge*
Hon. ILANA DIAMOND ROVNER, *Circuit Judge*
Hon. DIANE P. WOOD, *Circuit Judge*
Hon. TERENCE T. EVANS, *Circuit Judge*
Hon. ANN CLAIRE WILLIAMS, *Circuit Judge*
Hon. DIANE S. SYKES, *Circuit Judge*

No. 06-3044

JOEL HJORTNESS, A MINOR, BY AND THROUGH HIS
PARENTS AND LEGAL GUARDIANS ERIC HJORTNESS
AND GAIL HJORTNESS, ERIC HJORTNESS, AND
GAIL HJORTNESS,

*Plaintiffs-Appellants,*

*v.*

NEENAH JOINT SCHOOL DISTRICT,

*Defendant-Appellee.*

———————

Appeal from the United States District Court
for the Eastern District of Wisconsin.
Nos. 05 C 648, 05 C 656—**William C. Griesbach**, *Judge.*

———————

**ORDER**

On September 4, 2007, plaintiffs-appellants filed a petition for rehearing *en banc*, and on October 1, 2007, defendant-appellee filed an answer to the petition. A majority of the judges on the panel voted to deny rehearing. A vote on whether to grant rehearing *en banc* was requested and a majority of the judges in regular active service have voted to deny the petition. Judges Ripple, Rovner, Wood, and Williams' joint opinion dissenting from the denial of rehearing *en banc* is appended.

The petition is therefore DENIED.

RIPPLE, *Circuit Judge*, with whom ROVNER, WOOD and WILLIAMS, *Circuit Judges*, join, dissenting from the denial of rehearing en banc. Joel Hjortness, a student with significant learning and behavioral disabilities, attended public school in the Neenah School District. His parents believed that the school was not addressing adequately his learning and behavioral needs, and, in May 2003, they placed him in a residential private school. In November 2003, the school district began its process of reevaluating Joel for IDEA purposes. After a number of meetings, some with and some without Joel's parents, the school district concluded that he should be placed back in the public school. His parents requested a due process hearing to seek reimbursement for the cost of private school.

The ALJ determined that the school district had complied with the substantive requirements of the IDEA by providing Joel with an individualized education plan ("IEP") reasonably calculated to provide him meaningful educa-

tional benefits. The ALJ also found, however, that the school district had committed procedural violations of the IDEA by failing to develop the IEP with parental input and by making the decision to place Joel in the public school prior to the consultative process with his parents. The ALJ therefore ordered reimbursement. On appeal, the district court granted summary judgment in favor of the school district.[1] The Hjortnesses appealed.

A panel of this court affirmed, holding that predetermination was appropriate under the IDEA. Without citing any authority, the panel majority further created a mandatory presumption in favor of public school placement under the IDEA. The dissenting member of the panel concluded that the IDEA's presumption in favor of educating students with their non-disabled peers "does not permit a school district to circumvent the procedures that Congress has mandated by predetermining that a disabled student should be placed in one of its own schools." In her view, the IDEA requires placement decisions to be made based on the IEP, and allowing a school to make a placement decision before the IEP is developed would render the procedural process outlined in the IDEA meaningless.

---

[1] The district court appears to have disagreed with the ALJ's finding that Joel's placement had been predetermined, but its disagreement was based on its legal interpretation that predetermination is appropriate under the IDEA. *Hjortness ex rel. Hjortness v. Neenah Joint Sch. Dist.*, 2006 WL 1788983 at *6 (E.D. Wis. June 27, 2006) (referring to 20 U.S.C. § 1412(a)(5)(A), the IDEA's mainstreaming provision, and concluding that "the District had no obligation to consider placing Joel at [the private school] unless and until it concluded that he could not receive a free and appropriate public education in district schools"). The panel majority appears to have assumed the ALJ's finding that predetermination had occurred; it merely repeated the district court's conclusion that predetermination was appropriate.

While the panel majority has amended its opinion to verbalize support for *Board of Education of Township High School District No. 211 v. Ross,* 486 F.3d 267, 274 (7th Cir. 2007), the text of the revised opinion notably leaves intact its approval of predetermination.[2] It takes this stance despite the fact that, only five months ago in *Ross,* this court recognized that, when school authorities determine the placement of a child in advance of the statutorily mandated consultative process with the child's parents, they violate the procedural obligations of the IDEA. The resulting IEP cannot be implemented because it is not the result of the process mandated by Congress, and therefore does not result in a free and appropriate education. In *Ross,* we noted that the IEP was the "central tool" for determining placement and that a school district could not hold "sham" IEP meetings for the purpose of merely ratifying a predetermined placement decision. *Id.* (quoting *Deal v. Hamilton County Bd. of Educ.,* 392 F.3d 840, 857 (6th Cir. 2004); *Spielberg v. Henrico County Pub. Sch.,* 853 F.2d 256 (4th Cir. 1988)). In the present case, by contrast, the panel majority concluded that predetermination was permissible so long as it resulted in a substantively appropriate public placement.

---

[2] The panel majority opinion addressed what it recognized to be "the appellants' main challenge"—that the school district inappropriately predetermined Joel's placement. It concluded: "The ALJ found that the school district made its decision to place Joel in public school before the IEP was written. However, the IDEA requires that the school district educate Joel with his nondisabled peers to the 'greatest extent appropriate.' 20 U.S.C. § 1412(a)(5)(A). Recognizing that we owe great deference to the ALJ's factual findings, we find that the IDEA actually required that the school district assume public placement for Joel. Thus, the school district did not need to consider private placement once it determined that public placement was appropriate."

The panel majority's decision is also contrary to the majority of decisions on the issue in the courts of appeal. The seminal case is the Fourth Circuit's decision in *Spielberg,* 853 F.2d 256, a case quite similar to this one. In *Spielberg*, a severely handicapped child was attending a private residential school. The public school district began an evaluation of his needs to develop an IEP, which "from the beginning" focused on placement at the public school district's special education facility. *Id*. at 257. After a series of letters and meetings with the parents, an IEP was drawn up, and the child was placed at the public school. *Id*. The Spielbergs appealed. The local hearing officer determined that the new IEP was substantively appropriate, but the district court found that the school district had violated the procedural requirements of the Education of All Handicapped Children Act (the precursor to the IDEA) by determining placement prior to developing an IEP. *Id*. at 257-58. The Fourth Circuit affirmed the district court's decision that the IEP must be developed prior to placement, holding:

> The defendants violated EHA procedures when they resolved to educate Jonathan Spielberg at [the public facility], and then developed an IEP to carry out their decision. This failure to follow EHA procedures is sufficient to hold that the defendants failed to provide Jonathan with a FAPE [free appropriate public education].

*Id*. at 259.

The Sixth Circuit, relying on *Spielberg*, has agreed that predetermination is inappropriate under the IDEA, and that it can result in a denial of a free and appropriate education. *Deal v. Hamilton County Bd. of Educ.*, 392 F.3d 840 (6th Cir. 2004) ("Because it effectively deprived Zachary's parents of meaningful participation in the IEP process, the predetermination caused substantive harm and therefore deprived Zachary of FAPE."); *see also Nack*

*v. Orange City Sch. Dist.*, 454 F.3d 604, 610 (6th Cir. 2006). The Ninth Circuit also has found that predetermination of placement prior to formation of an IEP is impermissible under the IDEA. *W.G. v. Bd. of Trustees of Target Range Sch. Dist. No. 23*, 960 F.2d 1479 (9th Cir. 1992). Indeed, until the panel's decision, only the First Circuit had held (cursorily) that predetermination does not necessarily result in a denial of FAPE. *See Hampton Sch. Dist. v. Dobrowolski*, 976 F.2d 48 (1st Cir. 1992).

In this case, the ALJ made a finding that the Neenah School District had predetermined Joel Hjortness' public school placement before the formulation of the IEP in the consultative process. Therefore, it concluded, the placement decision was made without meaningful participation by the parents. This procedural violation denied Joel a free and appropriate public education. The panel majority opinion, contrary to the positions of the majority of other circuits, summarily concluded that this predetermination was appropriate under the IDEA.

The process sanctioned by the panel majority is also contrary to the regulations of the agency charged with the administration of the statute. The district court quoted 34 C.F.R. 300.552(c), in effect at the time of this incident, which stated that "[u]nless the IEP of a child with a disability requires some other arrangement, the child is educated in the school that he or she would attend if nondisabled." 2006 WL 1788983 at *6. Subpart (c), however, should not be read without its preceding subpart, which notes: "The child's placement . . . [i]s based on the child's IEP." 34 C.F.R. 300.552(b)(2). A child's placement determination must be made *after* the required consultation with the child's parents and development of an IEP.

Similarly, the mainstreaming provision of the IDEA, 20 U.S.C. § 1412(a)(5)(A), on which the panel majority relies, provides a preference for education of a disabled student with his non-disabled peers. It is debatable whether

this provision also presumes public placement over private placement. Nevertheless, the provision is qualified with the phrase "to the maximum extent appropriate." Whether such placement is appropriate can only be determined after consultation with the child's parents and the development of an IEP. The school district may *presume* placement in a public school, but it may not *predetermine* placement there.

Allowing school districts to predetermine placement prior to the consultative process would have drastic consequences for the administration of the IDEA, for the governance of our educational system and for the rights of parents to have a meaningful say in the education of their child. As the dissent to the panel majority notes, school districts now have an incentive to start with a desired result and work backwards to develop an IEP with only the minimal goals that are achievable by the pre-selected placement. As the dissent correctly notes, the IDEA's presumption in favor of educating students with their non-disabled peers "does not permit a school district to circumvent the procedures that Congress has mandated by predetermining that a disabled student should be placed in one of its own schools." The IDEA requires placement decisions to be made based on the IEP; allowing a school district to make a placement decision before the IEP would render the process mandated by the IDEA meaningless and leave the parents with nothing more than a charade.

The panel majority's insistence on the retention of its approval of predetermination creates, at the very least, a significant ambiguity in the law of the circuit and, it appears, a conflict with the established law of this circuit. It also appears to set the law of this circuit on a trajectory contrary to the majority of the circuits that have examined the question, and contrary to the established position of the agency charged with the administration of the statute. Members of the bench and bar, whose professional re-

sponsibilities involve the administration of the IDEA, must deal with an added and unnecessary burden because of the court's failure to clear up this situation through a rehearing by the full court. Unless this situation is corrected swiftly, the result will be a drastic disruption in the administration of the statutorily mandated consultative procedure between parents and school officials and a significant dilution of parental rights to participate in the education of their child. Accordingly, I respectfully dissent.

A true Copy:

      Teste:

                          _____

                          *Clerk of the United States Court of Appeals for the Seventh Circuit*

USCA-02-C-0072—11-14-07