**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 12a0529n.06

Nos. 10-5388, 10-5422

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**

*May 22, 2012*

LEONARD GREEN, Clerk

| | |
|---|---|
| ADAM WAYNE D., by and through his natural parents, David D. and Angela D., his parents and next friends, ) ) ) | |
| **Plaintiff-Appellant Cross-Appellee,** ) ) ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF KENTUCKY |
| v. ) ) | |
| BEECHWOOD INDEPENDENT SCHOOL DISTRICT, ) ) | **O P I N I O N** |
| **Defendant-Appellee Cross Appellant.** ) | |

Before: COLE, GILMAN, and WHITE, Circuit Judges.

**HELENE N. WHITE, Circuit Judge.** Plaintiff Adam Wayne D. ("Adam") appeals the district court's dismissal of his claims under the Individuals with Disabilities Education Act ("IDEA") and section 504 of the Rehabilitation Act. Defendant Beechwood Independent School District ("Beechwood") cross-appeals the district court's reversal of the Exception Children's Appeals Board's ("ECAB") decision that Beechwood's procedural due process rights were violated during the administrative hearing. For the reasons set forth below, we affirm the district court's decision on Beechwood's claim and reverse the district court's dismissal of Adam's claims.

**I.**

Adam was born on December 13, 1993. At the age of four, a Beechwood pathologist diagnosed Adam as having a phonological disorder. As a result of this classification, Beechwood developed an Individualized Education Program ("IEP") for Adam that included thirty minutes of

speech therapy weekly from September 1998 through February 24, 1999. After that date, Beechwood concluded that Adam's articulation had improved and discontinued services.

When Adam was in first grade, he had significant difficulty learning to read and his teacher referred him for evaluation. Beechwood used the Wechsler Intelligence Scale for Children-III to evaluate Adam. Adam had a Full Scale IQ of 106. Beechwood then administered the Wechsler Individual Achievement Test to Adam. Given Adam's IQ, he needed a score of 84 or below in an area tested to qualify for special education services under Kentucky law; Adam scored 87 on reading comprehension. Based on this score, Beechwood concluded that Adam did not have the requisite "severe discrepancy" between achievement and intellectual ability to warrant a finding of specific learning disability. Consequently, Beechwood did not develop an IEP to assist Adam with his reading difficulties, but instead implemented a reading program for him.

In August, 2001, at the beginning of Adam's second-grade year, his parents procured another evaluation, at their own expense, from a speech and language pathologist recommended by Beechwood. This pathologist, Dr. Sandra Tattershall, found that Adam was weak in "phonological awareness" and needed "individual intervention to develop phonemic awareness and writing immersion." Despite this assessment, Beechwood did not provide additional educational services for Adam, and Adam's parents instead obtained tutoring for him at their own expense to improve Adam's reading.

When Adam entered third grade, Beechwood evaluated Adam again to determine his eligibility for special education services. Although Adam again failed to score low enough to qualify for special education services, Beechwood gave Adam remedial reading instruction. By fourth

2

grade, Adam's teachers had to administer his tests orally due to his reading difficulties. In February 2004, Adam's parents obtained another independent evaluation, this time from the Cincinnati Children's Hospital Division of Developmental Disabilities. The evaluation concluded:

> The current education assessment indicates a significant language-based learning disability affecting reading and written language. Adam has particular difficulty with the visual auditory associations required for reading as well as problems with word attack, spelling, and inversion of letters and words when reading. Frequent vowel confusions were noted in reading and writing.

The evaluation further recommended that Adam obtain tutoring from a learning-disability specialist and stated that "[a]lthough Adam may not qualify for learning disability services in the state of Kentucky, it is evident that he has a learning disability and will require both remediation and accommodations in the classroom."

Based on this evaluation, the Admissions and Release Committee ("ARC") developed an IEP for Adam on October 7, 2004, the fall of his fifth-grade year. This IEP listed Adam as having a speech-and-language disability and provided that Adam would receive 120 minutes of monthly speech language pathology assistance. However, the IEP did not address Adam's weaknesses in reading, writing, spelling, and memory. Beechwood claimed that it could not provide such services under Kentucky law because Adam's evaluations did not establish that he had a specific learning disability in those subjects.

Adam's parents subsequently contacted Beechwood to request that the IEP be amended to include services in reading, writing, spelling, and memory. After Beechwood refused, Adam, through his parents, requested a due process hearing on June 30, 2005. In the due process complaint, Adam framed the issue as:

3

Disagreement beginning in 1999 related to IDEA SLD[1] eligibility. The School is holding that a severe discrepancy is required for assistance in memory, motor skills, reading, writing, expressive skill, socialization and spelling. LEA[2] historically has and continues to refuse service in those areas due to a stated lack of severe discrepancy. Parents hold that requirements for 504, ADA and IDEA protection have been met and that a severe discrepancy has been illustrated. The school refuses to acknowledge a relationship between the child's severe phonological disorder documented in 1998 (covered by an IEP) and his ongoing needs. Child has been denied 504, ADA and IDEA rights (FAPE) beginning in 1999 in contradiction to repeated parental writing.

On August 17, 2005, the hearing officer issued a Notice of Hearing and Issues that read:

Whether or not the LEA has denied the Student a free appropriate public education by failing to identify him as eligible to receive services under the IDEA.

The primary dispute appears to revolve around the question of whether or not a severe discrepancy exists in memory, motor, reading, writing, expressive, socialization, spelling and phonological skills, sufficient to require the LEA to provide services under the IDEA.

The hearing officer held a four-day hearing on August 23rd and 24th and September 2nd and 9th, 2005. In the hearing officer's decision, issued on December 15, 2005, she stated:

The issue as stated by the undersigned Hearing Officer in her Notice of Hearing and Issues is too generalized a statement to accurately reflect the real nature of the dispute between the parties. A careful review of the evidence presented and the briefs of the parties reveals the following more specific issues in dispute:

1.     Whether or not the LEA complied with IDEA and the Kentucky Administrative Regulations in determining that the Student was not

---

[1]SLD is the acronym for specific learning disability.

[2]LEA stands for Local Educational Agency—in this case, Beechwood.

4

eligible for special education services as a student with a specific learning disability;

2. Whether or not the Student was eligible for special education services each and every year under any classification of disability;

3. Whether or not the Student made more than de minimis educational progress in those years for which he was eligible for special education services;

4. Whether or not the Student's IEP complies with the IDEA and Kentucky Administrative Regulations;

5. Whether the LEA or the Springer School is the proper educational setting for the Student;

6. What is the appropriate limitations period in this case.

The hearing officer ruled in favor of Beechwood on issues 1-3 and 5, upholding Beechwood's testing methods and the conclusion that Adam does not have a specific learning disability. The hearing officer further found that the appropriate limitations period is four years. However, the hearing officer also concluded that Adam's 2004 IEP was inadequate, resulting in Adam being denied a free appropriate public education (FAPE) as required under the IDEA. As a result the hearing officer ordered the following relief for Adam:

3. The Student's ARC shall meet within 10 business days of this order to discuss the IEP, to write comprehensible and truly measurable annual goal(s) and short-term objectives, and to consider whether any related services are necessary for the Student to benefit from his education.

4. The parents are entitled to reimbursement for any tutoring expenses incurred from October 7, 2004 until the above-ordered new IEP is written and adopted by the ARC. In addition, the LEA shall reimburse the parents for transportation expenses, at the state mileage rates in effect during this period.

5. If the parents' health insurance policy has a maximum lifetime benefit, which the parents should document to the LEA with a written statement from the insurer detailing the provision of the policy that describes the limitation, the LEA shall reimburse the parents for the difference between the cost of the evaluation and any amount already reimbursed to the parents. The LEA shall also reimburse the parents

5

for any co-payments for tutoring expenses incurred between October 7, 2004 and adoption of the new IEP.

Beechwood appealed the hearing officer's decision with respect to the 2004 IEP to the ECAB. In the appeal, Beechwood claimed that its procedural due process rights were violated by the hearing officer's consideration of the adequacy of the 2004 IEP without informing Beechwood that it intended to do so. The ECAB granted Beechwood's appeal and reversed the relief awarded to Adam.

Adam filed a complaint in the Eastern District of Kentucky on May 11, 2006, in which he sought reinstatement of the hearing officer's order with respect to the 2004 IEP and asserted a separate claim of relief under section 504 of the Rehabilitation Act.

On March 6, 2007, the district court held a status conference. At this conference, the court informed the parties that it thought bifurcation was appropriate and thus would hear evidence on the notice issue decided by the ECAB prior to reviewing the merits of plaintiffs' claims. The court held an evidentiary hearing limited to the notice issue on May 18, 2007. On March 15, 2010, without any further hearings or briefing, the court issued its decision on both the notice issue and the merits of plaintiff's claims. The court reversed the ECAB's decision on the notice issue but rejected the hearing officer's finding that the 2004 IEP was inadequate. The court also dismissed Adam's claim under the Rehabilitation Act.

## II.

A district court must give "modified de novo review" to the administrative officer's finding of facts under the IDEA. *N.L. v. Knox County Sch.*, 315 F.3d 688, 692 (6th Cir. 2003). Under this

6

standard of review, "a district court is required to make findings of fact based on a preponderance of the evidence contained in the complete record, while giving some deference to the fact findings of the administrative proceedings." *Knable ex rel. Knable v. Bexley City Sch. Dist.*, 238 F.3d 755, 764 (6th Cir. 2001). This Court then applies "a clearly erroneous standard of review to the district court's findings of fact, and a de novo standard of review to its conclusions of law." *N.L.*, 315 F.3d at 692.

## III.

## A.

We first address Beechwood's contention that it did not have notice that the hearing officer was going to rule on the adequacy of Adam's 2004 IEP during the administrative hearing. Beechwood claims it had notice only of the original pre-hearing statement of issue:

> Whether or not the LEA has denied the Student a free appropriate public education by failing to identify him as eligible to receive services under the IDEA.

According to Beechwood, this issue concerned Beechwood's determination that Adam did not have a specific learning disability, not the adequacy of Adam's 2004 IEP. The ECAB agreed with Beechwood and found that neither the original issue stated by the hearing officer nor the evidence presented at the hearing placed Beechwood on notice that the 2004 IEP was at issue. In its decision reversing the ECAB, the district court concluded that the parties' multi-year discussions with each other regarding Adam's education "make pinpointing precise issues or challenges difficult," and offered the following four reasons for its finding that Beechwood had proper notice:

> 1. a hyper-technical or overly restrictive interpretation of the notices preceding the due process hearing would not be appropriate, because

7

the lengthy and protracted history between the parties and their familiarity with each other provided them with knowledge and awareness of contested matters that were not expressly identified on the paperwork preceding the hearing;

2. there were communications between the parties about these contested points, which communications continued until only a few days before the letter complaint was sent by Mr. D[.];

3. Mr. D[.] was given guidance by School District officials about the preparation and filing of a request for due process hearing, during which it was suggested that he keep the request concise; and

4. the due process hearing itself evidences that Beechwood expected to address the 2004 IEP, and in more than just "background" fashion.

**B.**

It is well-established that "the fundamental requirement of procedural due process is that an individual be given an opportunity to be heard at a meaningful time and in a meaningful manner." *Morrison v. Warren*, 375 F.3d 468, 475 (6th Cir. 2004) (citing *Matthews v. Eldridge*, 424 U.S. 319, 335 (1976)). For this requirement to be satisfied, a party must have "notice of the charges and an opportunity to view and contest the evidence supporting them." *Id.* (citing *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 545 (1985)). Even when notice is not provided prior to an administrative hearing, "due process is not offended if an agency decides an issue the parties fairly and fully litigated at a hearing." *Yellow Freight Sys., Inc. v. Martin*, 954 F.2d 353, 358 (6th Cir. 1992). "[T]he test is one of fairness under the circumstances of each case - whether the [defendant] knew what conduct was in issue and had an opportunity to present his defense." *Id.* (quoting *Soule Glass and Glazing Co. v. NLRB*, 652 F.2d 1055, 1074 (1st Cir. 1981)).

Because the adequacy of the 2004 IEP was not explicitly raised in the due process complaint nor in the hearing officer's notice of issue, the pertinent question is whether Beechwood nonetheless

8

knew that the adequacy of the 2004 IEP was at issue during the hearing and had an opportunity to present a defense on that matter. The answer to that question is yes.

In the eight-month period between the creation of the 2004 IEP and the filing of the due process complaint, Adam's parents sent at least five emails to Beechwood expressing their dissatisfaction with the 2004 IEP because it did not provide services for Adam in the areas of reading, writing, spelling, and memory. In response, Marilyn Kephart, a Beechwood member of ARC who partially drafted the IEP, informed Adam's father that Adam did not qualify for those services because he did not have a specific learning disability. Once it became clear that Beechwood would not amend the 2004 IEP to include the aforementioned services, Kephart instructed Adam's father on how to draft his due process complaint. In so doing, Kephart told him to be concise, speak globally, and prioritize issues. The first three lines of the concise due process complaint state:

> Disagreement beginning in 1999 related to IDEA SLD eligibility. The School is holding that a severe discrepancy is required for assistance in memory, motor skills, reading, writing, expressive skill, socialization and spelling. LEA historically has and continues to refuse service in those areas due to a stated lack of severe discrepancy.

Although the phrase "2004 IEP" is not used, it is clear from the face of the complaint that the primary concern is Beechwood's failure to provide Adam services in certain academic areas. This, in and of itself, placed Beechwood on notice that the adequacy of Adam's IEP was at issue because under the IDEA, the IEP is the vehicle through which a school outlines the services it will provide to qualifying students. Once an IEP has been drafted, an allegation that the school is refusing to provide necessary educational services is tantamount to an allegation that the IEP is deficient.

9

Additionally, the correspondence between Adam's parents and Beechwood made apparent that the impetus for the complaint was the dissatisfaction of Adam's parents with the 2004 IEP.

Further, even if Beechwood lacked pre-hearing notice, it was placed on notice during the hearing when Adam's counsel discussed the inadequacy of the 2004 IEP in his opening statement and when Adam's father testified about the deficiencies in the 2004 IEP, all without objection. Under the circumstances, Beechwood had notice that the adequacy of the 2004 IEP was at issue and thus had ample opportunity to present a defense on that matter during the four-day hearing. Thus, Beechwood's procedural due process rights were not violated. The district court's ruling on this issue is affirmed.

## IV.

Adam raises several procedural and substantive issues on appeal. We begin our discussion with Adam's procedural argument that the district court improperly ruled on the merits of his claims without informing the parties that such a decision was forthcoming. During the proceedings below, the district court *sua sponte* decided to bifurcate the litigation into two parts - - the notice issue and the merits. The district court subsequently held an evidentiary hearing solely on the notice issue; both the pre-hearing and post-hearing briefs addressed only the notice issue. However, when the district court issued its opinion almost three years later, it decided both the notice and merits issues without informing the parties that the case was no longer bifurcated or allowing either party the opportunity to present additional evidence or argument.

10

**A.**

Under 20 U.S.C. §1415(i)(2), a district court "(i) shall receive the records of the administrative proceedings; (ii) shall hear additional evidence at the request of a party, and (iii) basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate." This Court "has taken an expansive view of the scope of additional evidence that may supplement the administrative record" and "has declined to adopt the narrow position of other circuits 'that additional evidence is admissible only in limited circumstances, such as to supplement or fill in the gaps in the evidence previously introduced.'" *Deal v. Hamilton Cnty. Bd. of Educ.*, 392 F.3d 840, 850 (6th Cir. 2004) (citing *Metro Gov't v. Cook*, 915 F.2d 232, 234 (6th Cir. 1990)). "A district court's decision regarding additional evidence in an IDEA case will be reviewed for abuse of discretion." *Id.*

**B.**

On December 14, 2006, Adam requested that the court hear additional evidence on the notice issue, which the court granted. A few months later, on March 6, 2007, the court issued its decision to bifurcate the matter. After the court's bifurcation decision, neither party made a request to present additional evidence with respect to the merits of Adam's IDEA or Section 504 claims. Because the Section 504 claim was not litigated at the administrative hearing, there was no information in the record regarding that claim. Thus, additional evidence on that issue may have been especially appropriate. Although Beechwood contends that the district court lacked jurisdiction over that claim because Adam failed to exhaust it during the administrative process, Adam raised the issue by inclusion of the following language in his administrative complaint:

11

> Parents hold that requirements for 504, ADA and IDEA protection have been met and that a severe discrepancy has been illustrated.

And, as Beechwood concedes on appeal, even if Adam failed to establish a claim under the IDEA, he may still have been entitled to more services under the Rehabilitation Act. Yet, Adam never had the opportunity to present any evidence on this issue before the district court. Although Adam conceivably could have filed a motion to introduce additional evidence on the merits while the court's decision on the notice issue was pending, he cannot be faulted for failing to doing so in light of the court's ruling that the case would be bifurcated and the notice issue decided first.

The plain language of 20 U.S.C. §1415(i)(2)(B) requires the district court to "hear additional evidence **at the request of a party**." 20 U.S.C. §1415(i)(2)(B) (emphasis added). Although the district court has discretion to determine whether evidence is in fact "additional" or simply cumulative, the court cannot exercise that discretion where the parties are not given an opportunity to make the request in the first place. Accordingly, we conclude that the district court's failure to inform the parties that the case was no longer bifurcated and that the merits of Adam's claims were being considered, which effectively prevented the parties from making a request under 20 U.S.C. §1415(i)(2)(B), was an abuse of discretion. The district court's dismissal of Adam's IDEA and section 504 claims is reversed and those claims are remanded.[3]

---

[3]Remand is also appropriate because the court's rejection of the hearing officer's determination that the 2004 IEP was inadequate was based on an argument not raised by either party - - that the Hearing Officer never explained how Adam's difficulties in reading, writing, spelling, and memory *resulted from* his speech and language disability - - and the court failed to make any factual findings regarding that argument to support its decision. *See Kenton Cnty. Sch. Dist. v. Hunt*, 384 F.3d 269, 282 n.13 (6th Cir. 2004). The lack of argument and findings is particularly troublesome due to the district court's obligation to accord special deference "to the fact-findings

12

## V.

We affirm the district court's decision reversing the ECAB on Beechwood's procedural due process claim. We reverse the district court's decisions on Adam's IDEA and Rehabilitation Act claims and remand for proceedings consistent with this opinion. In light of our decision, we will not consider the remaining claims raised by Adam on appeal.

We also acknowledge that Adam was in sixth grade when this complaint was filed. He is now close to graduating from high school. Given the protracted length of this litigation, the district court should conduct all necessary proceedings in this matter as soon as possible.

---

of the administrative proceedings . . . when educational expertise is essential to its findings." *Nack ex rel. Nack v. Orange Sch. Dist.*, 454 F.3d 604, 609 (6th Cir. 2000) (quoting *N.L. ex rel. Ms. C. v. Knox Cnty. Sch.*, 315 F.3d 688, 692 (6th Cir. 2003)).