NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 12a0730n.06

Nos. 11-1493 / 11-1567

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED

*Jul 05, 2012*

LEONARD GREEN, Clerk

|  |  |  |
|---|---|---|
| GERALD WOODS and PATRICIA WOODS, on their own behalf and on behalf of their minor child, T.W., | ) ) ) | |
| Plaintiffs-Appellants, Cross-Appellees, | ) ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF MICHIGAN |
| v. | ) ) ) | |
| NORTHPORT PUBLIC SCHOOL; NORTHPORT PUBLIC SCHOOL BOARD OF EDUCATION, | ) ) ) | |
| Defendants-Appellees, Cross-Appellants. | ) ) ) | |

BEFORE: MOORE, ROGERS, and GRIFFIN, Circuit Judges.

GRIFFIN, Circuit Judge.

Plaintiffs Gerald and Patricia Woods, parents of minor child T.W., initiated this action pursuant to the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400 *et seq.*, alleging that Northport Public School and its school board ("Northport") denied their son a "free appropriate public education." Following a favorable administrative decision, plaintiffs filed suit in the United States District Court for the Western District of Michigan, seeking attorneys' fees and other relief. Northport asserted several cross claims. Thereafter, both parties moved the district court for judgment on the administrative record, which was granted in part and denied in part. On appeal, both parties challenge several portions of the district court's order. For the reasons that follow, we affirm in part and reverse in part.

I.

In exchange for federal funding, the IDEA requires states to identify, locate, and evaluate "[a]ll children with disabilities residing in the State . . . who are in need of special education and related services." 20 U.S.C. § 1412(a)(3)(A). A recipient state is then required to provide a "free appropriate public education" ("FAPE") for any such disabled child. 20 U.S.C. § 1412(a)(1)(A). In order to provide a FAPE, the state's local educational agencies—typically, the local school district—must create an individualized educational program ("IEP") addressing each disabled child's particular needs. 20 U.S.C. § 1414(d). The IEP must contain a specific statement of the child's current performance levels, the child's short-term and long-term goals, the proposed educational services, and criteria for evaluating the child's progress. *Id.* The school district must then review the IEP on an annual basis to make necessary adjustments and revisions. 20 U.S.C. § 1414(d)(4). In addition, all participating educational agencies are required to "establish and maintain" certain "procedural safeguards" to ensure that all disabled children receive a FAPE. 20 U.S.C. § 1415(a).

The IDEA provides a hearing process for parents who disagree with their child's IEP. Parents may challenge an IEP by filing a complaint against the local educational agency and requesting a "due process hearing." 20 U.S.C. §§ 1415(b)(6)-(8) and (f). In Michigan, the relevant procedures are set forth in Administrative Code Rule 340.1724f. Pursuant to this rule, due process complaints are administered by the Michigan Department of Education. Mich. Admin. Code R. 340.1724f(2). Upon receipt of a due process complaint, the matter is assigned to an administrative law judge, commonly referred to as an Independent Hearing Officer ("IHO"), for a hearing. *Id.* at

340.1724f(6). Any party "aggrieved" by the final decision of the IHO may bring a civil action in

state or federal court. *Id.* at 340.1724f(7).

## II.

The relevant background facts of this case were summarized by the district court as follows:

At the heart of this litigation is T.W., the son born to [p]laintiffs on September 30, 1998. T.W. was diagnosed with autism and cerebral palsy, disabilities that qualify him for special education and related services under the IDEA. Plaintiffs live within the Northport School District, a geographically remote school district in Northern Michigan. The Northport School District is also one of the smallest school districts in the State of Michigan, with a total kindergarten-through-12th grade population of approximately 150 students and a total staff of only 16 teachers.

T.W. began half-day kindergarten at Northport Public School in 2004. In May 2005, plaintiff Gerald Woods won a seat on the school board. An IEP was developed June 6, 2005[,] and implemented September 6, 2005, when T.W. attended first grade. Plaintiffs subsequently filed a due process hearing request in the State Office of Administrative Hearings and Rules (SOAHR) challenging the June 6, 2005[,] IEP. However, on October 14, 2005, before the due process hearing, the parties reached a Settlement Agreement. On October 26, 2005, the parties stipulated to a dismissal of the then pending administrative proceeding.

A second IEP was developed May 3, 2006[,] and implemented October 24, 2006, when T.W. attended second grade. A third IEP was developed May 14, 2007[,] and implemented in the fall of 2007, during T.W.'s third grade year.

On August 31, 2007, [p]laintiffs initiated another administrative proceeding, requesting the appointment of an Independent Hearing Officer (IHO) to hear their dispute with [d]efendants, which concerned whether T.W. had been afforded a FAPE during the 2005-06 and 2006-07 school years and whether the IEP proposed for the 2007-08 school year was also deficient.

* * *

The parties do not dispute that on November 2, 2007[,] and again on November 16, 2007, more than ten days before the due process hearing began, [d]efendants

proffered a "Ten–Day Offer" under 20 U.S.C. § 1415(i)(3)(D) (i) (I & II) in an effort to avoid the due process hearing. Plaintiffs did not accept either settlement offer.

The due process hearing took place over thirty-two days between November 2007 and August 2008. The IHO heard testimony from thirty-seven witnesses, testimony that is contained in thirty-two volumes and exceeds 7000 pages. Further, hundreds of exhibits were submitted and entered into the Administrative Record. The parties submitted post-hearing briefs to summarize the evidence, the applicable law, proposed findings of fact, and relief requested. Plaintiffs' brief was 426 pages in length. Defendants' brief was 118 pages. The replies were 152 and 48 pages, respectively.

Meanwhile, on June 9, 2008, a fourth IEP was developed, but it was never implemented. Plaintiffs removed T.W. from the school and began to privately educate him. In August 2008, [p]laintiff Gerald Wood was recalled from his Board seat.

*Woods ex rel. T.W. v. Northport Pub. Sch.*, No. 1:09–cv–243, 2011 WL 1230813, at *3-4 (W.D. Mich. Mar. 31, 2011) (internal citations omitted).

On February 2, 2009, the IHO issued a 141-page decision. The IHO addressed twelve main topics, granting in part and denying in part plaintiffs' due process complaint. The IHO determined, in relevant part, that Northport's "performance on the IEP terms for the 2006-2007 school year was seriously deficient" because "[a]greed upon services were not implemented," "consultative/direct work of the resource program teacher was not done[,] . . . the district never arranged for the agreed upon contribution of the outside autism intervention consultant," and "[t]he meager amount of teacher consultant time was insufficient to allow meaningful input into creation or delivery of any specially designed academic instruction[.]" Because of these deficiencies, the IHO found that T.W. made "[n]egligible progress in the general curriculum." Regarding T.W.'s 2007-2008 school year, the IHO found that "[l]ess instructional assistance was offered overall in that neither resource

program consultative services nor autism intervention specialist services were offered" and "[o]verall academic growth was also lacking." Finally, the IHO determined that Northport had committed procedural violations of the IDEA by failing to provide plaintiffs with certain testing protocols and by failing to allow T.W.'s parents to fully participate in the development of goals and objectives for the 2007-2008 IEP.

To compensate plaintiffs for Northport's violations of the IDEA, the IHO ordered several forms of relief. That relief included, in relevant part, evaluations of T.W.'s present abilities, an updated IEP, 768 hours of one-to-one compensatory education with a teacher certified with an endorsement to teach students with autism, and a prospective placement at Northport providing T.W. with "one-to-one direct instruction by a special education certified teacher with an endorsement to teach students with autism." The one-to-one direct instruction was set to take place "daily at the same time and for the same duration that [T.W.]'s general education classmates [were] receiving instruction in reading, writing and mathematics."

Following the issuance of the IHO's decision, plaintiffs filed the present action, seeking attorneys' fees and costs. The complaint was thereafter amended to challenge several portions of the IHO's decision. In response, Northport filed an answer and several counterclaims that also challenged portions of the IHO's decision.

Pursuant to Federal Rule of Civil Procedure 12(c), the parties filed cross-motions for judgment on the administrative record. The district court denied defendants' motion in its entirety, holding that the plaintiffs had succeeded in demonstrating that T.W. was denied a FAPE during his

second and third-grade years and appropriately compensated by the IHO. Plaintiffs' motion for judgment on the administrative record was denied in part and granted in part. The district court granted plaintiffs' request for attorneys' fees and costs, but limited the grant to those fees and costs incurred prior to Northport's November 16, 2007, settlement offer. The district court denied plaintiffs' motion with respect to all other claims. Both parties have now filed timely appeals.

III.

Before we begin our analysis, we address two pending motions for judicial notice. First, Northport objects to the plaintiffs' sealed appendix, contending that they violated Federal Rule of Appellate Procedure 30 when they failed to file the appendix alongside their First Brief, waiting instead to file the appendix alongside their Third Brief. Northport requests the court to take judicial notice of an email exchange between the parties and impose sanctions. This motion is frivolous.

An appendix is not required when the record is readily available on the district court's electronic docket. *See* Sixth Cir. R. 30(a)(1). In the plaintiffs' First Brief, all record citations were accessible to the court, and, thus, no appendix was required. In contrast, in support of its cross-appeal, Northport relied upon numerous sealed documents that were not readily available to the court. Accordingly, it was necessary for Northport to file a sealed appendix in support of its Second Brief. *See* Sixth Cir. R. 30(a)(1), (c)(1). Thereafter, and in response to Northport's Second Brief, plaintiffs acted appropriately in filing a sealed appendix to support their Third Brief. *See* Sixth Cir. R. 30(c)(2). Accordingly, Northport's motion for judicial notice is denied.

Plaintiffs have also filed a motion for judicial notice, requesting the court to take notice of the district court's recent decision ordering Northport to reimburse plaintiffs for pre-settlement offer attorneys' fees and costs in the amount of $25,313.81 and $1,857.82, respectively. We will grant this unopposed motion. *See Mallory v. Eyrich*, 922 F.2d 1273, 1281 (6th Cir. 1991) (taking judicial notice of "developments in [the] case since [the] appeal was commenced").

IV.

We begin our analysis with a discussion of the applicable standard of review. When an IDEA action is filed, the district court: "(i) shall receive the records of the administrative proceedings; (ii) shall hear additional evidence at the request of a party; and (iii) basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate." 20 U.S.C. § 1415(i)(2)(C). In so doing, the district court "should make an independent decision based on the preponderance of the evidence but also should give 'due weight' to the determinations made during the state administrative process." *Deal v. Hamilton Cnty. Bd. of Educ.*, 392 F.3d 840, 849 (6th Cir. 2004) (citing *Bd. of Educ. of the Hendrick Hudson Cent. Sch. Dist. v. Rowley*, 458 U.S. 176, 206 (1982)).

In applying this "modified de novo" standard of review, district courts may not "simply adopt the state administrative findings without an independent re-examination of the evidence," nor may they "substitute their own notions of sound educational policy for those of the school authorities which they review." *Id.* (quoting *Doe ex rel. Doe v. Metro. Nashville Pub. Schs.*, 133 F.3d 384, 387 (6th Cir. 1998) and *Thomas v. Cincinnati Bd. of Educ.*, 918 F.2d 618, 624 (6th Cir. 1990)). The

amount of "due weight" afforded to the administrative findings varies depending on whether such findings are based on educational expertise. *McLaughlin v. Holt Pub. Schs. Bd. of Educ.*, 320 F.3d 663, 669 (6th Cir. 2003). "Less weight is due to an agency's determinations on matters for which educational expertise is not relevant. . . . More weight is due to an agency's determinations on matters for which educational expertise is relevant." *Id.* Stated succinctly, a district court "may set aside administrative findings in an IDEA case only if the evidence before the court is more likely than not to preclude the administrative decision from being justified based on the agency's presumed educational expertise, a fair estimate of the worth of the testimony, or both." *Bd. of Educ. of Fayette Cnty., Ky. v. L.M.*, 478 F.3d 307, 312-13 (6th Cir. 2007) (internal quotation marks and citation omitted).

On appeal, we apply a clearly erroneous standard of review to the district court's findings of fact and a de novo standard to its conclusions of law. *Deal*, 392 F.3d at 850. Mixed questions of law and fact are reviewed de novo. *Id.* Like the district court, we must give "due deference to the state administrative hearing officer's decision." *Id.*

In the case at bar, Northport asserts that the district court erred in its application of the modified de novo standard of review by giving too much deference to the IHO, an individual Northport contends did not actually possess "educational expertise." We disagree. Certainly, the district court could have provided a more detailed description of its review of the administrative record. However, there is no indication that an independent review did not occur. Indeed, the district court accurately described the applicable standard of review and the level of deference

required.  In addition, an IHO "is a representative of the state *presumed* to have both the educational expertise and the ability to resolve questions of educational methodology that the federal courts do not have." *Deal*, 392 F.3d at 865 (emphasis added).  Accordingly, the district court was correct to give deference to the IHO.

Northport also asserts that the district court erred in not giving deference to the Northport professionals that created the IEPs at issue.  This argument makes little sense.  Our prior opinions make clear, as described above, that deference is due to the IHO.  The district court was not in a position to give deference to the Northport professionals *and* the IHO, whose findings are in conflict. And, the cases cited by Northport only reinforce the notion that deference is due to the IHO.  *See, e.g.*, *Burilovich v. Bd. of Educ. of Lincoln Consol. Schs.*, 208 F.3d 560, 565 (6th Cir. 2000) ("[C]ourts must give 'due weight' to the state administrative proceedings."); *Renner v. Bd. of Educ. of Pub. Schs. of City of Ann Arbor*, 185 F.3d 635, 641 (6th Cir. 1999) ("[D]ue weight shall be given to [administrative] proceedings in actions brought under the IDEA.") (internal quotation marks and citation omitted).  Accordingly, we find no error in the district court's application of the modified de novo standard of review.

V.

We now move to our substantive assessment of the parties' claims on appeal, beginning with those claims challenging the underlying IDEA violations found by the IHO and affirmed by the district court.  Our analysis under the IDEA has two distinct parts.  "First, [we] must determine whether the school system has complied with the procedures set forth in the IDEA.  Second, [we]

must assess whether the IEP developed through those procedures was reasonably calculated to enable the child to receive educational benefits." *Deal*, 392 F.3d at 853-54 (citations omitted). The party challenging an IEP carries the burden of proving by a preponderance of the evidence that the IEP was inadequate. *Id.* at 854.

In the present appeal, the parties challenge portions of the district court opinion relating to the IEPs developed for T.W.'s second and third-grade years. We begin by addressing T.W.'s second-grade IEP, for which no procedural violations are alleged. We then address T.W.'s third-grade IEP, for which both procedural and substantive violations are alleged.

A.

The IHO determined that T.W. did not receive a FAPE during his second-grade year, and the district court agreed. On appeal, Northport contests this finding, asserting that, despite some implementation failures, T.W. nevertheless obtained meaningful educational benefits during the second grade. We disagree.

In order to provide a FAPE, an IEP must be "reasonably calculated to enable the child to receive educational benefits." *Knable ex rel. Knable v. Bexley City Sch. Dist.*, 238 F.3d 755, 763 (6th Cir. 2001). While "providing special education and related services to handicapped children is not guaranteed to produce any particular outcome," *Rowley*, 458 U.S. at 192 (internal quotation marks and citation omitted), in order to constitute a FAPE, an IEP must confer a "meaningful educational benefit gauged in relation to the potential of the child at issue." *Deal*, 392 F.3d at 862

(internal quotation marks and citation omitted). Accordingly, an IEP is insufficient if it provides only "trivial educational benefit." *Id.* (internal quotation marks and citation omitted).

In the case at bar, the IHO held that Northport denied T.W. a FAPE during his second-grade year because it failed to implement certain important aspects of the 2006-2007 IEP. Primarily, the IHO found that T.W. was not provided with promised time in the "resource room," where he was to obtain special education services from Laura Jones, a teacher certified in the education of autistic children.[1] Northport also failed to provide T.W. with promised consultation services with an autism intervention specialist. Northport does not meaningfully challenge these factual findings, nor does it dispute that the resource room services were a significant aspect of T.W.'s second-grade IEP. *Houston Indep. Sch. Dist. v. Bobby R.*, 200 F.3d 341, 349 (5th Cir. 2000) ("[A] party challenging the implementation of an IEP must show more than a *de minimis* failure to implement all elements of that IEP, and, instead, must demonstrate that the school board or other authorities failed to implement substantial or significant provisions of the IEP."). Indeed, such services were to be provided to T.W. for 20-30 minutes *each school day* during his second-grade year.

The IHO held, and the district court agreed, that because of Northport's failure to provide certain promised services, T.W. made little academic progress. Northport disputes this finding, asserting that, despite its implementation failures, T.W. obtained meaningful educational benefits

---

[1]Laura Jones violated the IHO's sequester order and contacted other witnesses in an attempt to suppress evidence and influence testimony. The IHO thereafter found Jones's credibility to be compromised because of her "disparate versions of how resource services were purportedly accomplished." Accordingly, the IHO held that there was no evidence that the required resource room services were ever provided.

and therefore was not denied a FAPE. *See Nack ex rel. Nack v. Orange City Sch. Dist.*, 454 F.3d 604, 614 (6th Cir. 2006) ("[T]he IDEA does not guarantee success–it only requires a school to provide sufficient specialized services so that the student benefits from his education.") (internal quotation marks and citation omitted). This assertion, which presents a question of fact, is reviewed for clear error. *Bobby R.*, 200 F.3d at 347.

The district court did not clearly err in finding that T.W. did not obtain *meaningful* academic benefits during his second-grade year in relation to his potential and, thus, was denied a FAPE. *Deal*, 392 F.3d at 862. It is undisputed that T.W. was significantly behind in reading, writing, and mathematics. Indeed, the testimony supports the finding that T.W. did not progress academically and, in fact, regressed in some areas. *Berger v. Medina City Sch. Dist.*, 348 F.3d 513, 522 (6th Cir. 2003) ("Academic results have been recognized as an important factor in determining whether an IEP is reasonably calculated to provide educational benefits."). The evidence indicates that T.W. was not improving because he was not given enough "stimulation" through his school programming. And, such stimulation was lacking, at least in part, because Northport failed to provide promised services.

As noted by Northport, the testimony of several witnesses indicates that T.W. did make some progress during his second-grade year. Nevertheless, the testimony also supports the finding that such progress was not *meaningful* in light of T.W.'s potential. *Deal*, 392 F.3d at 862. Indeed, Dr. John Milanovich testified that "with appropriate services," T.W. could make "significant gains" in reading, writing, and mathematics. While Dr. Milanovich asserted that T.W. may not be able to

obtain full grade-level skills, he should not be regressing. In light of this record, the standard of review, and the deference afforded to the educational expertise of the IHO, the district court correctly upheld the IHO's determination that T.W. was denied a FAPE during his second-grade year.

B.

We next turn to T.W.'s third-grade IEP, for which the IHO found both procedural and substantive violations of the IDEA. As noted above, we must first address the procedural violations. Thereafter, we assess whether T.W. was substantively denied a FAPE. *Deal*, 392 F.3d at 853-54.

1.

Through the passage of the IDEA, Congress intended to "maximize" parental involvement in the education of their disabled children by imposing numerous procedural requirements. *Rowley*, 458 U.S. at 182, n.6. Accordingly, we "strictly review an IEP for procedural compliance." *Deal*, 392 F.3d at 854 (internal quotation marks and citation omitted). However, mere "technical deviations will not render an IEP invalid." *Id.*

Northport challenges the finding of two procedural violations in the preparation of T.W.'s third-grade IEP. First, the IHO found that plaintiffs were denied meaningful parental participation in the IEP process when they were not given access to certain testing protocols. Plaintiffs requested these protocols so that they could be reviewed by their expert in preparation for the third-grade IEP meeting, but the protocols were not provided. Later, plaintiffs again requested that the protocols be provided to their expert, Dr. Milanovich. And the protocols were thereafter sent by certified mail.

The package was not retrieved, however, and it was eventually returned to Northport. No effort was made to inform plaintiffs that the materials had been returned, despite their inquiries.

Northport does not dispute these facts. Nevertheless, it asserts that plaintiffs had access to the protocols because Northport invited plaintiffs to review the documents in person at the Northport campus. This argument is unavailing.

The IDEA provides that parents must be allowed "to examine all records relating to [their] child." 20 U.S.C. § 1415(b)(1). In this case, the parents themselves did not want to review the protocols, but wanted Dr. Milanovich to review them in making his IEP recommendations. *See* 34 C.F.R. § 300.613(b) ("The right to inspect and review education records under this section includes . . . The right to have a representative of the parent inspect and review the records."). Dr. Milanovich, located in Ann Arbor, Michigan, could not reasonably be expected to travel to Northport to perform such a review. *See Letter to Anonymous*, 213 IDELR 188, at 3 (OSEP January 18, 1989) ("[A] parent shall receive copies of the records when he or she lives too far from the school district to see the records in person.").

Moreover, when the protocols were returned to Northport undelivered, Northport did not resend the protocols, nor did it inform plaintiffs of the failed delivery. Accordingly, we agree with the district court that a procedural violation of the IDEA occurred. Moreover, we agree that this violation infringed upon the plaintiffs' ability to participate in the IEP process, resulting in substantive harm. *See Nack*, 454 F.3d at 611 (noting that substantive harm occurs when a procedural violation "infringe[s] upon [a] [p]arent's opportunity to participate in the IEP process") (internal

quotation marks omitted). Indeed, without access to the protocols, plaintiffs' expert was unable to consider their contents in making his IEP recommendations, lessening the parents' ability to advocate for their son during the IEP process. *See Knable*, 238 F.3d at 766 ("The IEP conference is the primary opportunity for parental involvement in the process of developing an IEP.").

As a second procedural error, the IHO found that Northport denied plaintiffs meaningful participation in the development of academic goals and objectives. *See id.* at 769 (noting that "goals and objectives to be achieved" must be contained within the IEP). Northport admits that such goals and objectives were developed outside of the parents' presence, but asserts that this fact did not impede the plaintiffs' meaningful participation. Once again, we disagree.

The audio recording of the spring 2007 IEP meeting reveals that Northport professionals were unwilling to meaningfully address academic goals for T.W. during the spring 2007 IEP meeting, despite discussion of the need to do so. *Deal*, 392 F.3d at 857 ("[T]o fulfill the goal of parental participation in the IEP process, the school district was required to conduct, not just an IEP meeting, but a *meaningful* IEP meeting."). Nevertheless, Northport asserts that plaintiffs were not denied meaningful participation, citing *Hjortness ex rel. Hjortness v. Neenah Joint School District*, Nos. 05-C-0648, 05-C-0656, 2006 WL 1788983 (E.D. Wis. June 27, 2006). However, the facts of *Hjortness* are easily distinguished from those presented here. In *Hjortness*, the court noted that

> [o]n several occasions in the course of the two-and-a-half hour [IEP] meeting, members of the team attempted to focus on the task of setting specific goals and objectives. [The student]'s mother, along with her attorney, was part of that process and was specifically asked for her input. Rather than suggest goals and short-term objectives she wanted included in the IEP, [the] mother made clear to the team that she did not believe the District could provide her son an appropriate education.

*Id.* at *7. In contrast, plaintiffs in this case requested that academic goals be developed at the IEP meeting, but this request was denied and the IEP goals were developed later. Because plaintiffs were denied meaningful participation in the creation of the academic goals and objectives for their son, the district court was correct in finding that a substantively harmful procedural violation occurred. *Nack*, 454 F.3d at 611. The district court did not err in upholding the IHO's findings with regard to procedural violations of the IDEA during the development of the 2007-2008 IEP.

2.

Having resolved the procedural issues, we now address the question of whether T.W.'s third-grade IEP was sufficient to provide him with a FAPE. In comparison to his second-grade year, T.W. was provided with *less* individualized services in his third-grade IEP. For example, T.W. was provided with fewer autism teacher consultations and no resource room services. In light of the fact that T.W. was not meaningfully progressing in his academic skills, the IHO found this reduction in services to constitute a denial of a FAPE.

Like the district court, we find that the IHO's holding is entitled to deference as it involves the application of educational expertise. *McLaughlin*, 320 F.3d at 669. Given this deference, we agree with the district court that T.W.'s third-grade IEP was insufficient to provide T.W. with a FAPE. As noted above, the services provided to T.W. during his second-grade year were not providing him with meaningful educational benefits. Accordingly, it was reasonable to find that an IEP that further reduced T.W.'s services would also be insufficient to provide a FAPE. Indeed, the record supports the IHO's finding that T.W. needed more individualized and direct instruction to

obtain educational benefits commensurate with his potential. We affirm the district court's finding that T.W. was denied a FAPE during his third-grade year.

VI.

Because we agree with the district court that Northport committed several violations of the IDEA, we must next address the issue of appropriate relief. Once a violation of the IDEA is established, the district court "shall grant such relief as the court determines is appropriate." 20 U.S.C. § 1415(i)(2)(C)(iii). In so doing, the court enjoys "broad discretion." *Knable*, 238 F.3d at 770 (internal quotation marks and citation omitted).

In this case, the parties challenge several aspects of the relief ordered by the IHO and affirmed by the district court. First, Northport challenges the amount and nature of the 768-hour compensatory-education award.[2] However, as noted above, T.W. was denied a FAPE for two academic school years and was significantly behind in reading, writing, and mathematics. Based upon this deficit, it was reasonable for the IHO to conclude that substantial compensatory-education hours were needed for T.W. to "reasonably recover" from the lengthy denial of a FAPE. Moreover, the IHO was rightfully concerned that T.W.'s "window of opportunity to become usefully literate ha[d] begun to close." Indeed, Dr. Milanovich testified that the window during which T.W. can more easily learn language skills is "potentially closing." Accordingly, the record supports the finding that significant compensatory education was appropriate "to compensate for a past deficient

---

[2]This award represents 12 hours of education for each of the 64 weeks T.W. was denied a FAPE.

program." *Draper v. Atlanta Indep. Sch. Sys.*, 518 F.3d 1275, 1280 (11th Cir. 2008) (internal

quotation marks and citation omitted).

Northport also asserts that it was inappropriate for the IHO to require that the compensatory-

education hours be provided by a professional certified to teach children with autism. However, this

requirement was reasonable because T.W. was denied promised services with a professional

possessing such certification during his second-grade year. Moreover, the record clearly

demonstrates that that expertise would be helpful in addressing T.W.'s special educational needs.

While Northport is experiencing difficulty in obtaining a teacher with the appropriate certification,

this difficulty does not render the IHO award inappropriate.[3]

Northport next challenges the IHO's order regarding the prospective placement for T.W. at

Northport. This placement required significant one-to-one instruction for T.W. on reading, writing,

and mathematics. Northport contends that such individualized instruction is incongruent with the

"least restrictive environment" provision of the IDEA, which states:

> To the maximum extent appropriate, children with disabilities, including children in
> public or private institutions or other care facilities, [should be] educated with
> children who are not disabled, and special classes, separate schooling, or other
> removal of children with disabilities from the regular educational environment
> [should occur] only when the nature or severity of the disability of a child is such that
> education in regular classes with the use of supplementary aids and services cannot
> be achieved satisfactorily.

---

[3]Northport moved the district court for relief from judgment, asserting that it was unable to locate a teacher with an endorsement to teach students with autism. That motion was denied and is not currently before this court. Indeed, the time during which Northport could have appealed this order has now passed.

20 U.S.C. § 1412(a)(5)(A). Accordingly, disabled students, to "the maximum extent appropriate for the individual child," should be placed in the general education classroom. *McLaughlin*, 320 F.3d at 671-72.

We consider three factors in determining whether a disabled child may be removed from the general education environment: "(1) whether the disabled student would benefit from inclusion [in] general education, (2) whether such benefits would be outweighed by benefits that are not provided in an inclusive setting, and (3) whether the disabled child disrupts the general education setting." *Id.* at 673, n.4. The placement of a child inside or outside the general education classroom is a question requiring educational expertise, requiring deference to the IHO. *Id.* at 673.

Despite the IDEA's least restrictive environment provision, "Congress [has] recognized that regular classrooms simply [will] not be a suitable setting for the education of many handicapped children." *Rowley*, 458 U.S. at 181, n.4. As noted above, the testimony supports the finding that T.W.'s window of opportunity to learn basic skills was closing. In addition, the record indicates that T.W. responded best to one-to-one instruction. Finally, the prospective placement ordered by the IHO still required T.W. to be in the general-education setting for half of every school day. Even the opinion of autism specialist Maureen Ziegler, relied upon by Northport, acknowledged that half-day resource room, half-day general education, would be appropriate. Accordingly, giving due deference to the IHO's presumed educational expertise and the district court's factual findings, we affirm the prospective IEP ordered by the IHO.

Finally, plaintiffs assert that the IHO erred in conditioning a portion of its ordered relief on T.W.'s re-enrollment at Northport. We agree.[4] The IHO held that upon his re-enrollment, T.W. would be entitled to several evaluations. Such evaluations were to be completed within 31 days of T.W.'s re-enrollment, with an IEP meeting to follow so that the then-current IEP could be amended.

It was inappropriate to require T.W. to re-enroll in order to receive an amended IEP. The IDEA requires state-educational agencies to make a FAPE "available to all children with disabilities residing in the State between the ages of 3 and 21." 20 U.S.C. § 1412(a)(1)(A). This requirement is not limited to publicly enrolled children. It is residency, rather than enrollment, that triggers a district's IDEA obligations. *James ex rel. James v. Upper Arlington City Sch. Dist.*, 228 F.3d 764, 768 (6th Cir. 2000). Indeed, recipient states have an affirmative duty to locate, identity, and evaluate disabled children. 20 U.S.C. § 1412(a)(3). "[R]efusing to do an IEP pre-enrollment constitutes . . . a violation [of the IDEA]." *James*, 228 F.3d at 768. "To hold otherwise would allow the school to slough off any response to its duty until the parents either performed the futile act of enrolling their son for one day and then withdrawing him as soon as the IEP was complete, or, worse, leaving the child in an arguably inadequate program for a year just to re-establish his legal rights." *Id.* Thus, to the extent that the IHO conditioned T.W.'s receipt of an IEP on re-enrollment, it was in error.[5]

---

[4]While asserted below, the district court did not directly address the issue of mandated re-enrollment.

[5]Plaintiffs assert that the IHO conditioned the compensatory-education hours on re-enrollment. A careful review of the IHO order, however, indicates that no such condition was imposed.

It was appropriate, however, for the IHO to condition T.W.'s prospective receipt of a FAPE on re-enrollment. To require Northport to fund T.W.'s continuing private education would create a substantial, unnecessary burden. This is especially true in light of the fact that there is no evidence in the administrative record indicating that Northport is unable to provide T.W. with a FAPE going forward.[6] *Doe ex rel. Doe v. Defendant I*, 898 F.2d 1186, 1192 (6th Cir. 1990) ("The parents' desire to use a private service, rather than a public one, does not establish a duty on the part of the school to pay for it . . . [when] [t]here is no showing that the tutoring offered by [the public school is] inadequate.").

Northport asserts that the issue of re-enrollment is moot because T.W. is currently enrolled at Northport. We disagree. "Under Article III of the Constitution [a court] may only adjudicate actual, ongoing controversies." *Honig v. Doe*, 484 U.S. 305, 317 (1988). Nevertheless, "if there is a reasonable likelihood that [plaintiffs] will again suffer the deprivation of . . . rights that gave rise to this suit," the court may exercise jurisdiction and resolve the issue. *Id.* at 318.

During T.W.'s time as a school-age child, his parents have filed three due-process complaints challenging four of T.W.'s IEPs. The most recent action, not before this court, resulted in an IHO decision that once again addresses the issue of re-enrollment. Moreover, T.W. is entitled to a FAPE until he is 21 years of age. Accordingly, it appears that mandated re-enrollment is an issue capable

---

[6]While new developments indicate that Northport has yet to hire a teacher certified to teach children with autism, this inability is not a part of the administrative record on appeal. Moreover, plaintiffs make no meaningful argument that, without such certification, Northport is unable to provide T.W. with a FAPE.

of repetition, yet evading review. *See id.* at 320-23; *Jenkins v. Squillacote*, 935 F.2d 303, 307 (D.C. Cir. 1991) (internal quotation marks and citations omitted) ("A placement and an IEP cover an academic year, a nine[-]month period. The Supreme Court has observed that administrative and judicial review of an IEP is 'ponderous' and usually will not be complete until a year after the IEP has expired."). Because this issue is capable of repetition, yet evading review, we directly resolve the matter, holding that the IHO erred in requiring T.W.'s re-enrollment to receive an amended IEP.

VII.

The final issue presented on appeal is that of attorneys' fees. Section 1415(i) of the IDEA provides, in pertinent part, that "the court, in its discretion, may award reasonable attorneys' fees as part of the costs . . . to a prevailing party who is the parent of a child with a disability." 20 U.S.C. § 1415(i)(3)(B)(i). A "prevailing party" is one who "'succeed[s] on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit.'" *Tompkins ex rel. A.T. v. Troy Sch. Dist.*, 199 F. App'x 463, 465 (6th Cir. 2006) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)).

"An award of costs to a prevailing party . . . is considered under an abuse of discretion standard." *Deal*, 392 F.3d at 850. In this case, we find no abuse of discretion. First, the district court correctly found that plaintiffs were the "prevailing party." *Tompkins*, 199 F. App'x at 465; 20 U.S.C. § 1415(i)(3)(B)(i). Thereafter, the district court appropriately exercised its discretion in determining a "reasonable" fee award, *Hensley*, 461 U.S. at 440, holding plaintiffs to be entitled to

$25,313.81 in fees and $1,857.82 in costs. This amount represents all fees and costs incurred by the plaintiffs prior to a settlement offer made by Northport on November 16, 2007.

Plaintiffs assert that the district court erred in its application of 20 U.S.C. § 1415(i)(3)(D)(i), in denying reimbursement for post-settlement offer attorneys' fees. This provision states:

> Attorneys' fees may not be awarded and related costs may not be reimbursed in any action or proceeding under this section for services performed subsequent to the time of a written offer of settlement to a parent if--
>
> (I) the offer is made within the time prescribed by Rule 68 of the Federal Rules of Civil Procedure or, in the case of an administrative proceeding, at any time more than 10 days before the proceeding begins;
>
> (II) the offer is not accepted within 10 days; and
>
> (III) the court or administrative hearing officer finds that the relief finally obtained by the parents is not more favorable to the parents than the offer of settlement.

20 U.S.C. § 1415(i)(3)(D)(i). Looking to this statutory provision, the district court held that because the relief ultimately obtained by the parents was not more favorable than that contained in the settlement offer, it would not exercise its discretion to award post-offer fees and costs.

We note that the ban on post-offer attorneys' fees does not apply when a parent was "substantially justified" in rejecting a settlement offer. 20 U.S.C. § 1415(i)(3)(E). Here, the district court held that the parents were substantially justified in rejecting the November 16, 2007, settlement offer because it did not provide for attorneys' fees and costs. Nevertheless, simply because post-offer attorneys' fees and costs were not *banned* by 20 U.S.C. § 1415(i)(3)(D), does not mean that the district court could not consider the relief ultimately obtained by plaintiffs in exercising its discretion in determining the *amount* of a "reasonable" attorneys' fee award.

Generally, plaintiffs are entitled to an award covering all of their attorneys' fees if they obtained "excellent results," but a reduced award if they "achieved only partial or limited success." *Hensley*, 461 U.S. at 435-36. The district court's analysis makes clear its belief that plaintiffs achieved only limited success in pursuing their due-process complaint beyond the November 16, 2007, settlement offer. Indeed, the court noted that the "outcome Plaintiffs obtained by proceeding through these lengthy and contentious administrative and judicial proceedings does not warrant its enormous price tag." This finding is not an abuse of discretion, and we affirm the award of attorneys' fees and costs.

## VIII.

We vacate the judgment for the limited purpose of modifying the order so as not to require that T.W. re-enroll at Northport to obtain an amended IEP. In all other respects, we affirm the judgments of the district court. We also grant plaintiffs' motion for judicial notice, and deny Northport's motion for judicial notice.