FILED
Jan 09, 2018
DEBORAH S. HUNT, Clerk

**NOT RECOMMENDED FOR PUBLICATION**
**File Name: 18a0018n.06**

**No. 17-5300**

**UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| M.G., a minor student, by and through her parent, C.G.; C.G., individually, | ) ) ) | |
| Plaintiffs-Appellants, | ) ) | |
| v. | ) ) ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF TENNESSEE |
| WILLIAMSON COUNTY SCHOOLS, | ) ) | |
| Defendant-Appellee. | ) ) | |

BEFORE: BOGGS, BATCHELDER, and BUSH, Circuit Judges.

BOGGS, Circuit Judge. M.G. and her parent, C.G. ("Plaintiffs"), allege that Williamson County Schools ("WCS") violated various substantive and procedural provisions of the Individuals with Disabilities Education Act ("IDEA"), Section 504 of the Rehabilitation Act ("Section 504"), Title II of the Americans with Disabilities Act ("ADA"), and Tennessee special-education laws.[1] A Tennessee State Administrative Law Judge ("ALJ") and federal district court both ruled in favor of WCS. For the reasons set forth below, we affirm the district court's order.

**I**

**BACKGROUND**

M.G. was a student in the Williamson County School District from 2010-2013. Plaintiffs claim that M.G. had various impairments during this time that made her eligible for special-

---

[1] Plaintiffs' action in the district court also named the Tennessee Department of Education ("TDOE") as a defendant. Plaintiffs and TDOE subsequently reached a settlement agreement and consented to the dismissal with prejudice of all claims against TDOE.

1

education services, including direct, or one-on-one, physical and occupational therapy, but that WCS failed to properly evaluate her for or provide these services.

A. <u>Facts</u>

M.G. began preschool in Williamson County in the fall of 2010. After an initial screening in October 2010 indicated that M.G. might be developmentally delayed, WCS evaluated M.G. in December 2010 to determine whether she was eligible for special-education services under the IDEA. Testing, which included evaluations of M.G.'s need for occupational therapy and physical therapy, revealed that M.G. was not eligible for special education.

M.G.'s family brought M.G. to many private doctors during her time as a student in the Williamson County School District. While the results from these visits varied, M.G.'s doctors generally agreed that M.G. had some kind of neurological condition that caused her to have low muscle tone and problems with her coordination. In March 2011, a child neurologist gave M.G. a prescription for private occupational, physical, and speech therapy to help her counter these deficits. It was not until the 2012-2013 school year, however, that M.G.'s family provided this prescription and much of M.G.'s other medical documentation to WCS.

M.G. entered kindergarten at Lipscomb Elementary School ("Lipscomb") in August 2011. As the lone four-year-old in her class, M.G. began the year behind her peers academically and also appeared to have some speech and motor-skills impairments. WCS quickly implemented a number of interventions to respond to M.G.'s needs. In October 2011, WCS designed and put into action a Response to Intervention ("RtI") plan that required M.G.'s kindergarten teacher to work one-on-one with M.G. three times a week on reading and letter-naming fluency. Then, in February 2012, Lipscomb's General Education Intervention Team ("GEIT") met to address a number of areas of concern, including M.G.'s fine and gross motor problems. In accordance with the GEIT plan that WCS and M.G.'s family created at this

meeting, both an occupational therapist and a physical therapist observed M.G. at school in the following weeks. Both professionals later testified that M.G. was making adequate progress and had no educational need for therapy services. WCS continued to monitor M.G. through its RtI and GEIT programs during the 2011-2012 school year.

Although M.G. began the following school year in first grade, WCS and M.G.'s family agreed to place her in kindergarten when it became apparent that first grade was too academically demanding for her. After receiving documentation of M.G.'s medical problems from some of M.G.'s doctors, WCS and M.G.'s parents created a Section 504 plan for M.G in October 2012. This plan contained all of the accommodations that M.G.'s family requested, including occupational-therapy consultations, in which a therapist would observe M.G. in the classroom and consult with M.G.'s teacher about ways that the teacher could respond to M.G.'s needs.[2]

When M.G. continued to fall behind academically, WCS initiated a second IDEA evaluation of M.G. in April 2013. As part of the evaluation, an occupational therapist at WCS observed M.G. on three different occasions in May 2013. The therapist concluded that M.G. suffered from some motor-skills deficits, but that her motor skills generally were within or above the normal range for a child her age, and that M.G. did not require direct therapy with an occupational therapist. WCS did not have the opportunity to complete the second IDEA evaluation of M.G., however, because M.G.'s parents withdrew M.G. from the WCS system in June 2013.

---

[2] M.G.'s parents did not ask at this time for services in which M.G. would work directly, or one-on-one, with a therapist, and the plan did not provide for such services.

**B.** <u>**Procedural History**</u>

In September 2013, Plaintiffs filed a due-process-hearing complaint, contending that M.G. had been denied a free appropriate public education ("FAPE"), in violation of IDEA. The hearing took place before a Tennessee State ALJ over the course of eight days in August and September 2014, concluding on September 19, 2014. WCS and Plaintiffs both submitted proposed findings of fact and conclusions of law on November 3, 2014. The ALJ issued a final order on August 25, 2015, ruling in favor of WCS.

Plaintiffs then filed a complaint and petition for judicial review in federal district court, asserting that WCS had violated the IDEA, ADA, Section 504, and Tennessee special-education laws. After Plaintiffs and WCS filed cross-motions for judgment on the administrative record, the district court granted WCS's motion and denied Plaintiffs' motion. This timely appeal followed.

## II

### STANDARD OF REVIEW

In a lawsuit brought to challenge an IDEA administrative decision, a district court "should make an independent decision based on the preponderance of the evidence but also should give 'due weight' to the determinations made during the state administrative process." *Deal v. Hamilton Cty. Bd. of Educ.*, 392 F.3d 840, 849 (6th Cir. 2004). Under this "modified de novo" standard of review, "[t]he amount of weight due to administrative findings depends on whether the finding is based on educational expertise," with more weight being due to an agency's determinations on matters for which educational expertise is relevant than on those for which it is not. *Ibid.* "[A]dministrative findings in an IDEA case may be set aside only if the evidence before the court is more likely than not to preclude the administrative decision from being justified based on the agency's presumed educational expertise, a fair estimate of the worth

of the testimony, or both." *Burilovich ex rel. Burilovich v. Bd. of Educ. of Lincoln Consol. Schs.*, 208 F.3d 560, 567 (6th Cir. 2000).

When examining a district court's review of an administrative decision in an IDEA case, we review the district court's findings of facts for clear error and its conclusions of law de novo. *N.L. v. Knox Cty. Schs.*, 315 F.3d 688, 692 (6th Cir. 2003). "Mixed questions of law and fact, including the question of whether a child was denied a FAPE, are reviewed de novo." *Deal*, 392 F.3d at 850. We "also must accord due deference to the state administrative hearing officer's decision." *Ibid.*

## III

## ANALYSIS

On appeal, Plaintiffs assert three claims of error: (1) that the district court gave undue weight to the ALJ's factual findings; (2) that WCS committed a number of procedural violations of the IDEA; and (3) that WCS's failure to provide direct occupational and physical therapy to M.G. constituted substantive violations of the IDEA, Section 504, ADA, and Tennessee special-education laws. We discuss each of these claims in turn.

## A. **Due Weight**

Plaintiffs first argue that the district court improperly deferred to the ALJ's decision.[3] We disagree. The district court adopted a magistrate judge's lengthy and well-reasoned report

---

[3] Specifically, Plaintiffs argue that the district court should have given no weight to the ALJ's decision for three reasons, but none of those reasons is meritorious. First, Plaintiffs argue that the ALJ's decision was late because it was not rendered within the forty-five days contemplated in 34 C.F.R. § 300.515(a), and that this lateness amounted to a constitutional due-process violation. However, Plaintiffs cite no cases where a late IDEA decision either rose to the level of such a violation or required a district court to give no weight to an ALJ's decision. Second, Plaintiffs argue that the district court should have given no weight to the ALJ's findings of fact, since the ALJ relied heavily on findings of fact proposed by WCS. However, none of the cases that Plaintiffs cite supports that conclusion. Third, Plaintiffs assert that the ALJ was biased against them, but do not present evidence of bias sufficient to overcome the "presumption of

and recommendation, which set out and applied the appropriate standard of review requiring the court to make an independent decision based on the preponderance of the evidence, while also giving due weight to the ALJ's factual findings. Contrary to Plaintiffs' contentions, such weight was warranted in this case, because the findings in question were based on the ALJ's presumed expertise in matters concerning WCS's decisions about whether to evaluate and provide therapy services to M.G. *See Woods v. Northport Pub. Sch.*, 487 F. App'x 968, 975–76 (6th Cir. 2012) (holding that administrative hearing officer's decision was owed deference because it pertained to whether a student should have been provided services by a specialist).

**B. Procedural Claims**

Plaintiffs next argue that WCS committed procedural violations of the IDEA by failing to (1) evaluate whether M.G. was a child with a disability and (2) provide prior written notice on three occasions.

### 1. Child Find

Under the IDEA, states must establish policies and procedures to ensure that children with disabilities are identified, located, and evaluated. 34 C.F.R. § 300.111(a)(1)(i). This is known as the "child-find" requirement.[4] To fulfill their child-find obligation, states must ensure that their schools take appropriate steps to identify and evaluate "[c]hildren who are *suspected* of being a child with a disability . . . and in need of special education, even though they are advancing from grade to grade." 34 C.F.R. § 300.111(c)(1) (emphasis added); *Bd. of Educ. of Fayette Cty. v. L.M.*, 478 F.3d 307, 313 (6th Cir. 2007) ("Even children who are only suspected of having a disability, although they are progressing from grade to grade, are protected by this

honesty and integrity" accorded to administrative adjudicators." *See Withrow v. Larkin*, 421 U.S. 35, 47 (1975).

[4] Section 504 contains a similar child-find requirement. 34 C.F.R. § 104.35(a).

requirement."). To establish a violation of the child-find requirement, a plaintiff "must show that school officials overlooked clear signs of disability and were negligent in failing to order testing, or that there was no rational justification for not deciding to evaluate." *L.M.*, 478 F.3d at 313 (quoting *Clay T. v. Walton Cty. Sch. Dist.*, 92 F. Supp. 817, 823 (M.D. Ga. 1997)).

WCS evaluated M.G. in December 2010, during M.G.'s year in preschool, to determine whether she was eligible for special-education services. WCS concluded that she was not eligible under the IDEA. Plaintiffs argue that WCS violated the child-find requirement by failing to re-evaluate M.G. during the period from December 2010 until April 2013, when WCS initiated a second IDEA evaluation of M.G. This second IDEA evaluation came too late, Plaintiffs claim, since M.G. should have been re-evaluated as early as August 2011 and no later than January 2012.

WCS neither overlooked clear signs of disability nor lacked rational justification in deciding not to re-evaluate M.G. until April 2013. WCS effectively utilized general intervention strategies, such as RtI and GEIT, and later an individualized Section 504 plan, to ensure that M.G. was making adequate progress. *See id.* at 314 (explaining that school district complied with child-find requirement by implementing various interventions for a student from kindergarten through second grade). In addition, the fact that WCS conducted a complete evaluation of M.G. in December 2010 further bolsters the conclusion that WCS acted appropriately in using alternative intervention strategies before deciding to order a second IDEA evaluation in April 2013. *See Ridley Sch. Dist. v. M.R.*, 680 F.3d 260, 273 (3d Cir. 2012) ("When a school district has conducted a comprehensive evaluation and concluded that a student does not qualify as disabled under the IDEA, the school district must be afforded a reasonable time to monitor the student's progress before exploring whether further evaluation is required.").

### 2. *Prior Written Notice*

A school must provide a student's parents with prior written notice within a reasonable time before it proposes to initiate or change, or refuses to initiate or change, the identification, evaluation, educational placement, or provision of a FAPE to a child with a disability. 20 U.S.C. § 1415(b)(3); 34 C.F.R. § 300.503(a). For a court to grant relief for a procedural violation of the IDEA, such as a failure to comply with the prior-written-notice requirement, a petitioner must show that the violation resulted in substantive harm to the student or her parents, "such as seriously infringing on the parents' opportunity to participate in the IEP process, depriving an eligible student of an IEP, or causing the loss of educational opportunity." *Berger v. Medina City Sch. Dist.*, 348 F.3d 513, 520 (6th Cir. 2003).

Plaintiffs argue that WCS violated the prior-written-notice requirement by neglecting to respond their requests for services under the IDEA that they made on January 11, 2012, April 25, 2012, and September 4, 2012. Even though WCS concedes that it did not provide Plaintiffs with prior written notice in response to these requests, Plaintiffs are not entitled to relief because, as will be discussed below, M.G. was not substantively eligible for special-education services. Plaintiffs also have not shown that WCS's failure to provide notice caused any loss of educational opportunity to M.G. or seriously infringed on their opportunity to participate in the special-education process, since M.G.'s parents continued to be closely involved in discussions with WCS about M.G.'s education despite the lack of prior written notice on the three occasions in question. *See ibid.* (holding that procedural violations did not deny student a FAPE because parents regularly communicated and met with school officials about student's education).

## C. Substantive Claims

Plaintiffs argue that WCS violated IDEA, Tennessee special-education laws, Section 504, and the ADA by failing to provide M.G. with direct occupational and physical therapy.

### a. IDEA

The IDEA ensures that all children with disabilities have access to a FAPE. 20 U.S.C. § 1400(c)(3). A student is a "child with a disability" and thus covered by the IDEA if (1) she has a qualifying disability and (2) requires *both* special education *and* related services as a result of that disability. 34 C.F.R. § 300.8(a). The term "related services" refers to "developmental, corrective, and other supportive services (including . . . physical and occupational therapy . . .) as may be required to assist a child with a disability to benefit from special education." 20 U.S.C. § 1401(26)(A); *see also* 34 C.F.R. § 300.34.

The district court held that Plaintiffs had not met their burden of proving that M.G. required related services in the form of direct occupational and physical therapy.[5] In pressing their claim on appeal that M.G. required such therapy, Plaintiffs rely on *Polk v. Cent. Susquehanna Intermediate Unit 16*, 853 F.2d 171 (3d Cir. 1988), which explained that physical therapy serves a dual purpose for students who are severely disabled. *Id.* at 176.

> First, because these children have extensive physical difficulties that often interfere with development in other areas, physical therapy is an essential prerequisite to education. For example, development of motor abilities is often the first step in overall educational development. . . . Second, the physical therapy itself may form the core of a severely disabled child's special education.

*Ibid.* Plaintiffs argue that, as in *Polk*, direct physical and occupational therapy should have been a core part of M.G.'s education.

---

[5] The magistrate judge also concluded that Plaintiffs failed to carry their burden in establishing that M.G. required special education. Since Plaintiffs need to show that M.G. required *both* special education and related services, and we hold that she did not qualify for the latter, we need not decide whether M.G.'s impairments necessitated special education.

We disagree. WCS evaluated and observed M.G.'s need for physical and occupational therapy numerous times during her three years as a student in the school district. WCS reached the same conclusion each time—that M.G. did not require direct physical and occupational therapy to meet her educational needs. Indeed, a physical therapist at WCS who observed M.G. during her first year in kindergarten stated that M.G., "gross motor wise, looked great as far as a kindergarten student." In addition, the occupational therapist at WCS who assessed M.G.'s need for occupational therapy during her 2013 IDEA evaluation wrote in her report that "it appears that . . . [M.G.'s] deficits are not impacting her educational performance at this time."

Although Plaintiffs challenge WCS's conclusions by pointing to M.G.'s doctor's prescription for occupational and physical therapy, "a physician cannot simply prescribe special education." *Marshall Joint Sch. Dist. No. 2 v. C.D. ex rel. Brian D.*, 616 F.3d 632, 640–41 (7th Cir. 2010). The IDEA does not require schools to provide physical and occupational therapy to all students who might "benefit from or need" those services outside of the educational context; rather, the IDEA only requires schools to provide those services to students who require them in order to receive "the full benefit of special education instruction." *See id.* at 641 (citing 20 U.S.C. §§ 1406, 1401(26)); *see also* 34 C.F.R. § 300.8(a)(2)(i) (if a child "only needs a related service and not special education, the child is not a child with a disability" under the IDEA). We therefore find M.G.'s educators' numerous assessments a better indicator of her need for special-education services than M.G.'s doctor's prescription. *See Winkelman v. Parma City Sch. Dist.*, 411 F. Supp. 2d 722, 733–34 (N.D. Ohio 2005) (holding that administrative hearing officer could disregard pediatric neurologist's testimony that student required therapy because he had never observed the student in a school setting and lacked expertise in education), *aff'd*, 294 F. App'x 997 (6th Cir. 2008); *Hupp v. Switzerland of Ohio Local Sch. Dist.*, 912 F.

Supp. 2d 572, 596 (S.D. Ohio 2012) ("Nothing in the statute or regulations requires the [IEP] team to adopt the recommendation of a student's private physician or psychologist."). Accordingly, we conclude that Plaintiffs have not shown that M.G. required direct therapy services and thus that M.G. was not eligible for special education under the IDEA.[6]

### b. *Section 504 and the ADA*

Section 504 makes it unlawful for a program or activity receiving federal funding to discriminate against, exclude from participation, or deny the benefits of the program or activity to an individual "solely by reason of her or his disability." 29 U.S.C. § 794(a). Title II of the ADA prohibits public entities, including public schools, from discriminating against disabled individuals or excluding them from participation in or denying them the benefits of the public entity's services, programs, or activities on account of that disability. 42 U.S.C. § 12132. Claims brought under the ADA and Section 504 generally are evaluated together. *See S.S. v. E. Ky. Univ.*, 532 F.3d 445, 453 (6th Cir. 2008). "Accordingly, a plaintiff seeking to state a claim under either the ADA or § 504 against a school receiving federal financial assistance must show that he or she is (1) disabled under the statute, (2) 'otherwise qualified' for participation in the program, and (3) being excluded from participation in, denied the benefits of, or subjected to discrimination under the program by reason of his or her disability." *Ibid.*

---

[6] Plaintiffs argue that Tennessee's special-education laws provide more coverage than the IDEA. They claim that a student can qualify as a "child with a disability" under Tennessee law so long as she has a qualifying disability and a need for related services as a result of that disability. *See* Tenn. Code Ann. §§ 49-10-102(1)(A) and (4)(C). The magistrate judge agreed with Plaintiffs, but the district court did not adopt that part of the magistrate judge's report and recommendation, holding that Plaintiffs could not prevail even under their preferred interpretation of Tennessee law, because M.G. did not require related services in the form of direct physical and occupational therapy. Since we too conclude that M.G. did not need such therapy, we also decline to decide whether Plaintiffs' interpretation of the eligibility requirements for Tennessee special-education law is correct.

Plaintiffs argue that WCS violated the ADA and Section 504 by failing to provide M.G. with direct physical and occupational therapy. This claim is without merit. WCS met its obligations under the ADA and Section 504 through its provision of RtI, GEIT, and a Section 504 plan, especially since the Section 504 plan included all of the services requested by M.G.'s family.

## IV

## CONCLUSION

For the foregoing reasons, we **AFFIRM** the judgment of the district court.